750 A.2d 692

Mark D. HORSLEY

v.

Jeanne M. RADISI.

No. 0792, Sept. Term, 1999.

Court of Special Appeals of Maryland.

April 28, 2000.

2 

**4**

Stephen P. Krohn (Krohn & Krissoff, P.A., on the brief), Annapolis, for Appellant.

Cynthia E. Young, Annapolis, for Appellee.

Argued before HOLLANDER, EYLER and THIEME, JJ.

HOLLANDER, Judge.

In this child support case, we must determine whether Md.Code (1984, 1999 Repl.Vol.), § 12–201 et seq. of the Family Law Article ("F.L.") permits a court to increase a parent's

child support obligation calculated in accordance with the Maryland Child Support Guidelines ("Guidelines"), in order to cover a portion of the costs of a child's recreational and educational activities. The issue arises from a decision of the Circuit Court for Anne Arundel County, which granted a Petition for Modification of Child Support filed by Jeanne Radisi, appellee, against Mark Horsley, appellant. Following two evidentiary hearings, the court increased appellant's monthly child support payments, in part to pay for various activities for the parties' three children. In addition, the court ordered appellant to contribute to the cost of orthodontic expenses as well as appellee's legal fees. This appeal followed.

Mr. Horsley presents three questions for our consideration, which we have rephrased:

I. Did the trial court err in requiring appellant to pay his *pro rata* share of an additional $360.00 allocated by the court for the expenses relating to the children's extracurricular activities and tutoring?

II. Did the trial court err in ordering appellant to pay orthodontic expenses *in futuro?*

III. Did the trial court err by obligating appellant to pay a portion of appellee's legal fees?

For the reasons discussed below, we answer question I in the affirmative and questions II and III in the negative. Therefore, we shall vacate the court's order and remand to the circuit court for further proceedings.

## FACTUAL SUMMARY

The parties were married on August 30, 1986, and divorced on September 12, 1997. Three children were born to the couple during the marriage: Janelle, on March 21, 1988; Alyssa, born December 9, 1989; and Michelle, born November 22, 1991. Among other things, the judgment of divorce awarded joint legal custody of the children, but gave appellee primary physical custody. Appellant was also ordered to pay $727.00 per month for the support of the three children.

On October 5, 1998, the mother filed a petition for modification of child support, seeking an increase based on: 1) a change in the children's needs, because of their ages; 2) the two older daughters qualify for gifted and talented programs, and the cost of such programs was not factored into the original child support award; 3) extraordinary medical expenses, including Janelle's need for orthodonture. Appellee also requested a "reasonable" contribution towards her legal fees. A child support worksheet and a financial statement were appended to the petition, reflecting a gross monthly income for the mother of about $1,000.00, and monthly expenses for the children of $1,518.50. In his answer to the petition, appellant contended that appellee, a teacher, had "done absolutely nothing to increase her own income, but rather, ha[d] chosen to be lazy and expect[ed] her former husband to pay for her lifestyle."

At the first evidentiary hearing, held on March 10, 1999, both parties testified.[1] At the time of the hearing, Janelle was ten, Alyssa was nine, and Michelle was seven.

Appellee described Janelle as very gifted, both musically and academically. The child had been nominated to audition for a special music camp, based on her talent as a young violinist. Alyssa was also considered academically talented, and she had recently begun to study the violin. Appellee produced brochures describing various gifted and talented programs, consisting of courses at a community college, for which both girls were eligible. No evidence was presented as to the extent of the girls' academic talents, the nature of the educational enrichment programs, or the inability of the girls' public school to meet their particular academic needs. Over appellant's objection, appellee claimed that the violin lessons cost at least $100.00 per month for each child, and the gifted

---

1. The court also heard testimony from Sharon Doyle, the supervisor of teacher personnel for Anne Arundel County Public Schools, who testified for appellant. In view of the issues presented, we need not recount Ms. Doyle's testimony.

and talented programs, would cost approximately $135.00 per month for both girls.

As of the hearing, Janelle had already been fitted for an orthodontic retainer, which cost approximately $300.00. Appellee claimed that Janelle would soon need braces, at a cost of $100.00 per month. She maintained, however, that the orthodontist was unable to provide a fixed price for the braces or the expected length of treatment, because that "depend[ed] on various other things that happened in [Janelle's] mouth."

In addition, appellee asserted that Michelle "has special education needs," and had to repeat the first grade. According to appellee, Michelle received free special education services in the areas of speech and language at her public school, but would benefit from private tutoring, which the mother estimated would cost approximately $360.00 per month, based on fees of $25.00 to $40.00 a session. Appellee conceded, however, that Michelle had not begun private tutoring, and thus she had not actually incurred such expenses.

During the marriage, appellee did not work outside the home. After the divorce, she earned money by babysitting, tutoring, and substitute teaching. At the time of the hearing, appellee was employed as a home and hospital instructor for the Anne Arundel County and Calvert County school systems, with an average monthly salary of about $1,000.00. She also worked as a private tutor several evenings a week. Appellee claimed that she had looked for summer employment at department stores and restaurants, but she could not obtain employment on a short-term basis. In 1997, she earned $13,594.00, and she had an income of $15,610.86 in 1998.

When the court asked appellee why she had not made more effort to increase her salary, appellee stated, in part:

I have been working a full-time position just maintaining the stability of my children. Working, I have baby-sat, I have tutored, I substitute taught. I go from, Your Honor, 5:30 in the morning until 10:00 o' clock at night. I attempted to take classes last year while I was teaching at Southern High

School, but the course work was very course specific at that time.

In an effort to obtain teaching re-certification, appellee was enrolled in two classes at a community college. In her view, her schedule had created significant stress for the girls. Appellee claimed monthly child care expenses of $150.00 for the mornings, but explained that she did not need afternoon child care, because her position enabled her to arrive home in time for the children's dismissal from school.[2]

During her testimony, appellee identified an invoice from her attorney in the amount of $1,825.00 for legal services rendered in connection with the modification request. The mother also testified that she owed her attorney an additional $5,000.00 for legal services provided in connection with the modification request.

At the time of the hearing, appellant had been employed by the United States Secret Service for over fifteen years. In 1998, he earned $53,800.00. He contended that he had "no idea" that his two older children had been recommended for gifted and talented programs, and acknowledged that he wanted his children to have "every opportunity" available to them. Nevertheless, he claimed that he did not have the financial resources to pay for gifted and talented programs, violin lessons, or remedial tutoring.

Regarding Janelle's orthodontic expenses, appellant maintained that it would be another year or two before his daughter actually required braces. With respect to Michelle, appellant asserted that he and the child's teacher both believed that the tutoring provided at her school was adequate to meet her needs.

In closing argument, appellee's counsel asked the court to include additional monthly expenses on Line 11.c of the Child Support Guidelines Worksheet, in the amount of $360.00 for

---

2. Because appellee does not challenge the court's decision to attribute additional income to her, we need not discuss further the evidence as to appellee's employment situation.

tutoring for Michelle and $300.00 for the combined costs of music lessons and gifted and talented programs for the two older girls. The following colloquy is relevant:

[APPELLEE'S COUNSEL]: The other expenses that we discussed and had testimony on included Michelle's special education needs, which at the Sylvan Learning Center would be $350 per month and at the Summit School would be $360 per month.

* * *

[APPELLEE'S COUNSEL]: We would therefore ask for the Summit School, which is more accessible to the home at $360 per month.

THE COURT: And as to the gifted and talented program, violin lessons or any of those other programs?

* * *

[APPELLEE'S COUNSEL]: Okay. For Jenelle [sic] and Alyssa, we believe that the gifted and talented programs are appropriate and that would be $100 per month. Now, [appellee] talked about private lessons as well, which she said would be a total of $200 per month. . . .

* * *

THE COURT: As to the gifted and talented program?

[APPELLEE'S COUNSEL]: Yes. That is the same, Your Honor. She testified that she was enrolling her in various programs. We showed you one of the brochures. The suggestion was that that would cost about $100 per month on average, per year. But, it is different programs, different places. It is not necessarily music.

THE COURT: I heard testimony with regard to the gifted and talented program—

[APPELLEE'S COUNSEL]: Yes.

THE COURT:—also with regard to violin lessons, which was separate.

[APPELLEE'S COUNSEL]: Yes. Right. $100 for gifted and talented, $200 for violin lessons.

Appellant's counsel opposed the request, arguing:

[APPELLANT'S COUNSEL]: These are not the kind of expenses that are contemplated by the statute. These are ordinary child support type payments. There is no provision, as much as maybe there should be, maybe. I can't accept that position. Nowhere in the child support guidelines does it allow for violin lessons or gifted and talented [programs]. . . .

\*　　\*　　\*

[APPELLANT'S COUNSEL]: They [i.e., the tutoring fees] are expenses that are not currently being undertaken. They are speculative expenses. There has been no expert testimony regarding them. There is a conflict in the testimony between the clients as to whether or not the child's needs are being adequately met.

The unrebutted testimony is that she is receiving additional special tutoring at the school. So, Your Honor, it is not appropriate to order any kind of extra tutoring expenses, let alone at the rate of $360 per month.

The mother's lawyer responded:

[APPELLEE'S COUNSEL]: Your Honor, the testimony is that she is not getting tutoring at school, she is in a program for children who have learning disabilities in the verbal area. She is not getting individualized instruction and it has been suggested by the school that this tutoring take place so that she progress at a normal level.

There are newspaper clippings galore talking about the fact that Anne Arundel County Board of Education has had to cut gifted and talented and special education programs, that parents have to pick up the slack.

For purposes of the Guidelines, the parties disagreed about whether appellant qualified for calculation of child support based on shared physical custody. " 'Shared physical custody' means that each parent keeps the child or children overnight

for more than 35% of the year and that both parents contribute to the expenses of the child or children in addition to the payment of child support." F.L. § 12–201(i); *see In re Joshua W.*, 94 Md.App. 486, 497 n. 4, 617 A.2d 1154 (1993). The court determined that the children spent 144 nights with their father, constituting 39.5 percent of the time. Accordingly, the court calculated child support by reference to the shared physical custody model. The court further found that the father, who paid the children's health insurance, had an adjusted monthly income of $4,438.00, and the court attributed $1,500.00 per month in earnings to the mother. Therefore, for purposes of the Guidelines, the parents' combined monthly income amounted to $5,938.00, of which the mother earned 25.3% and the father earned 74.7%. The court also found that the mother had monthly work-related child care expenses of $150.00.

As to orthodontics, the court said "the future is here." The judge indicated that he was "satisfied from the evidence that there has been examination of the child for orthodontia care, that it is necessary, that it is needed, that the cost is $100 per month." As to additional expenses for the children, the court ruled:

I do believe that the tutoring [for Michelle] is necessary. However, what I am going to do at this point is go back now and reflecting on my prior decision with regard to violin lessons, I am reducing that—taking that out and imposing, for additional expenses, a total of $360 per month that these parents have an obligation to provide for their children.

Appellee's counsel asked: "Can that be shared between the violin and the tutoring?" The court responded: "That is for violin lessons, gifted and talented, and tutoring." The court also said:

I have the net basic child support obligation to be $790 per month.

I made findings, as I explained to you earlier that the children in this case have needs. That there are work-related child care expenses of $150 per month. Extraordi-

nary medical expenses of $100 per month. And, there are additional expenses, taking into consideration the children's need for tutoring, violin lessons, and gifted and talented programs of $360 per month.

Those additional amounts amount to $610 of which $456 is charged to the father. The recommended child support order is $1,246 per month based on those computations.

The following discussion is also pertinent:

[APPELLANT'S COUNSEL]: I have three, four comments to make.

THE COURT: Okay.

[APPELLANT'S COUNSEL]: First of all, as long as payments are for my client's children he had no problem making them. Okay. That is number one.

Number two, he has serious doubts because none of these expenses has been incurred so far. These are not current expenses. He has serious doubts as to whether or not his former wife will use the money for these expenses.

\* \* \*

THE COURT: I want to share with you and with [appellee's counsel] that I am very concerned about what I call the chicken and the egg situation here. I am satisfied from the evidence that the children need orthodontic care, that it has been looked into. That it has not actually been incurred until today, but that it is needed. Likewise with regard to the additional expenses.

I am amenable to a provision that we provide for verification of expenses paid from time to time as requested.

Thus, in an order docketed on April 15, 1999, retroactive to March 1, 1999, appellant was ordered, *inter alia*, to increase his monthly child support payment from $727.00 to $1,246.00. Additionally, appellee was ordered to provide periodic verification to appellant that she was using the additional support for "orthodontic services, gifted and talented programs, tutoring, music lessons day care and/or a combination thereof...."

Appellant was also ordered to pay $500.00 toward appellee's attorney's fees.

Thereafter, appellant filed a motion to alter or amend judgment. He included a letter from Janelle's orthodontist indicating that the child would not need braces for at least a year. Moreover, the father contended that Michelle's November 1998 and January 1999 report cards did not reveal deficiencies in her learning ability. Rather, she " 'consistently demonstrate[d]' the requisite language arts skills (reading)." As to Alyssa and Janelle, he stated: "They are normal children taking violin lessons provided by their school." Nevertheless, he stated that he "would consider paying half of the cost" of a special violin camp that Janelle wanted to attend. Further, he contended that appellee did not actually incur any work-related child care expenses. Accordingly, on June 7, 1999, the court held another evidentiary hearing, at which it heard testimony from several witnesses, including: the parties; Janelle's orthodontist, Dr. Mairead O'Reilly; Michelle's first grade teacher, Barbara Rideout; and Denise McMurray, an Anne Arundel County music teacher.

Dr. Reilly, the orthodontist, testified that Janelle was first evaluated on July 29, 1998, when a retainer was prescribed, but the orthodontist could not "predict" an "exact time" when Janelle would be ready for further treatment. Accordingly, she was evaluated in August, September, November, and December of 1998, and was last seen on April 26, 1999. Dr. Reilly estimated that Janelle would need braces "anywhere between 11 and 13 years of age."

Ms. Rideout, Michelle's first grade teacher, testified that she saw nothing in Michelle's performance that would cause her to believe that Michelle required private tutoring. The teacher indicated that Michelle's "only problem" was her confidence level. She conceded, however, that Michelle is designated as a special needs child in the areas of speech and language, and that Michelle receives one-half hour of special education services each week, provided by the county, to help increase her "memory enhancing strategy" and "verbal rea-

soning." Several of the child's school assignments were produced as evidence of her learning difficulties.

Ms. McMurray, the music teacher, testified that Janelle, who was in her third year of violin lessons, was one of her "top" students, and she described the youngster as "gifted." On the other hand, she was not able to render an opinion as to Alyssa's talent, as she was only in her first year of violin lessons. She recommended private music lessons for both children.

At the time of the second hearing, appellee was working part-time, and essentially claimed that she would have to spend about $450.00 per month for child care in order to earn the salary that the court imputed to her. Further, she claimed that Michelle was tutored once a week, at a cost of $30.00 per session, but the mother hoped to have the child tutored twice each week. In addition, the children were to begin private music lessons in the summer. Appellee also indicated that she had purchased a violin for Janelle, which cost $629.00, and that Janelle's music camp cost $300.00. Additionally, both Janelle and Alyssa were on a waiting list for computer camp, which would cost $145.00 for each child. Appellee also testified that she enrolled Michelle in karate to help increase her self-esteem, self-discipline, and ability to focus.

During cross-examination, appellant's counsel inquired why appellee, as a special education teacher, could not provide tutoring for Michelle. Appellee stated:

I am not able to make progress with my own child as much as an uninvolved teacher would be able to do. There is always a difficulty. I have students of teachers coming to me privately for the same reason because children don't typically succeed in work with their own parents as they would with another.

During closing argument, appellant's counsel said:

[W]hat clearly is true is that she, [appellee], is trying to stick [appellant] with every conceivable nickel and dollar

and then when he overpays, she's looking for places to spend the money.

The children have never been in karate before, but now its [sic] a good idea to help with self-esteem which helps with some learning disability, which helps with school, so karate camp is needed.

Now, the children for the first time have to go to computer camp. First time. Now, the children have to go to strings camp. First time. All of a sudden, all of these things which are new since the last hearing by the way, are needed.

These, by my view, my limited view I suppose, are ordinary child support items. If she wants the children to take a string lesson or karate camp, these things—that is what child support is used to pay for. These are not additional line items that belong on the child support guidelines.

\*　　\*　　\*

Look at what's going on in this case. This is what's going on in this case. Look at the day care costs. There were no day care costs. She testified the last time it was $125 a month, $130—I can't remember. I think it was $125. Now, all of a sudden it is 400 and some dollars, but guess what? She still doesn't have the same job she didn't have the last time.

She is in the same circumstances. She doesn't have the full-time teaching job. And, if she did, which she doesn't, she would be earning $27,000 a year. Not the $18,000 a year that the Court has imputed to her. She simply is not credible.

Appellant's counsel also argued that it is inappropriate to allow additional child care expenses in response to appellee's imputed salary, because "it is a phony item." Appellee's counsel countered that "if you put her down working full-time, you have to give her credit for the day care. Both things need to be imputed or it is painfully unfair." Further, appellee's

counsel argued that if the children were not in summer camp, then they would have to be placed in day care.

Appellee's counsel also asserted that appellee was "the one that has to be believed" as to the children's needs. Moreover, appellee's lawyer argued: "[W]hat kind of attitude is this for a parent? No tutoring for a child with learning disabilities. No music lessons for a gifted child." She also stated: "It is not just how cheap can [appellant] get off, but what are these kids entitled to. That is what the guidelines are all about."

In rendering its ruling, the court stated:

The Court has reviewed the matter in detail today and taken additional testimony. With regard to the allegation of additional medical expenses, the Court finds from its notes and from its—at the hearing on March the 10th, that that amount of $100 per month was intended to represent the anticipated orthodontic payment which was not certain, but anticipated to be about $100 per month.

The Court is going to grant the motion and modify child support and is not going to include an amount for extraordinary medical expense. The Court finds that the child, Jenelle, [sic] is not undergoing orthodontic care at this time, but it is anticipated in the future.

What the Court is going to do is as I said, I am going to modify the amount of child support in that respect. But, also I am going to provide that the parties are to take the cost of orthodontic care for Jenelle [sic] in proportion to their financial abilities, which I will speak to in a few moments.

We will include that in an order to hopefully avoid them having to come back to Court yet another time.

* * *

I felt at that time and I still feel that it is more than fair to attribute to [the mother] $18,000 per year which is the $1,500 amount that was included in the child support guidelines. However, the Court felt at this time that it was appropriate, given her present circumstances to allow what the Court found to be actual day care expenses incurred at

this time. Which the Court computed at that time to be $150 per month. I don't find that to be in error and I am not going to change that at this time.

The other issue before this Court is the additional expenses pursuant to Family Law 12–204(i). The Court allowed $360 per month for additional expenses for the children. The Court took into consideration the need for tutoring and also the need for gifted and talented programs, and the need for violin lessons.

Before the Court today as we revisited, are some additional requests including soccer camp, violin camp, and of course the Court was asked to take them into consideration and I do. The purchase of the violin and computer camp, that is the one, excuse me.

I have taken all of these factors into consideration. The children should have the benefit of their parents' financial well-being. They should be able to have the benefit of all that financial success.

I felt on March the 10th and I tried to express that there has to be balance. There is a need to properly support the children and to see that they are adequately cared for and provided with all of the benefits that they should have. There is also a need to realize that it is not appropriate to afford them every possible potential need that we can think of.

I don't think that is the case here. What I do think the case is, is that the children should have the benefit of what their family has enjoyed. What their standard of living has been in the past. *So therefore, the Court computed an amount of $360 per month as an allowance toward tutoring, violin classes, and I will extend that today toward camps or other activities.*

The Court believed that $360 was fair. I still think it is fair. So, I am not going to change that at this time.

* * *

Again, the Court will order that the parties will share and pay the costs of orthodontia care for Jenelle [sic] if and

when that becomes necessary, in proportion to their adjusted actual income, which is 25.3 percent for Mrs. Radisi and 74.7 percent for Mr. Horsley.

(Emphasis added).

Accordingly, the court amended its order of April 15, 1999, by reducing appellant's monthly child support payment to $1,171.00. The order nonetheless reflects an increase from the original child support of $727.00 per month.

We will include additional facts in our discussion.

## DISCUSSION

### I.

Appellant contends that the court erred when it added the sum of $360.00 to the calculation of child support under the Guidelines, as an "allowance" toward the costs of tutoring, music lessons, gifted and talented programs, and camps. As we noted, the court required the parties to pay their *pro rata* share of that sum. Appellant claims that the activities for which the court allocated the $360.00 are not the kind of "additional expenses" that may be used as a basis to increase the statutory child support obligation. To the contrary, he urges that such expenses are subsumed in the child support obligation as "ordinary child support items." Not surprisingly, appellee vigorously disagrees.

We shall begin by briefly addressing two waiver claims, one advanced by appellee and the other by appellant. Neither has merit.

Appellee claims that appellant has waived any complaint that the basic child support obligation includes expenses for tutoring, music lessons, camps, and the like. She relies primarily on the following testimony of appellant during cross-examination:

[APPELLEE'S COUNSEL]: Are you aware that your children are both being recommended towards the gifted and talented programs? I am speaking of Jenelle [sic] and Alyssa.

[APPELLANT]: No, ma'am. I am not.

[APPELLEE'S COUNSEL]: If in fact your children have talent in violin or in academics do you think it would be important to allow them to participate in gifted and talented programs?

[APPELLANT]: I believe they should participate and I believe that their mother should discuss the situation with me. . . .

 ❖ ❖ ❖

[APPELLEE'S COUNSEL]: *Are you opposed to the idea of providing [violin] lessons for them?*

[APPELLANT'S COUNSEL]: Objection.

THE COURT: Overruled. You may answer. Are you opposed to that?

[APPELLANT]: *No. Not at all. Not at all.*

[APPELLEE'S COUNSEL]: *Are you opposed to their being in gifted and talented programs through the school?*

[APPELLANT]: I would have to look into it. *The answer would probably be no. I mean, common sense would be no. I want my children to have every opportunity that they can.* Again, I just wish that she had discussed these things with me.

(Emphasis added). Despite those comments, appellant consistently insisted that he "absolutely" lacked the financial resources to pay for such activities.

Appellee's contention as to waiver is unpersuasive. When appellee's counsel sought to have appellee testify to such expenses, appellant's counsel immediately objected, asserting that "there is no provision in the guidelines, either in the share[d] custody guidelines or in the sole custody guidelines for these types of expenses." In closing argument, appellant's counsel reiterated his position, stating:

These are not the kind of expenses that are contemplated by the statute. These are ordinary child support type payments. There is no provision, as much as maybe there should be, maybe. I can't accept that position. Nowhere in

the child support guidelines does it allow for violin lessons or gifted and talented—it is not in there.

There is a reason it is not there. The reason it is not there is when a paying parent pays his support it is supposed to take care of the level of income that the parties have. That is why the guidelines are so critical and so income sensitive for both of the parties. The children have the standard of living of the parents. That is why they are not appropriate.

■ Moreover, a parent's statement to the effect that he is not "opposed to the idea" of the child's participation in certain activities does not constitute an agreement to pay whatever cost may be associated with such activities. Therefore, we are amply satisfied that appellant's testimony did not constitute a waiver of his claim.

Appellant contends that, because appellee failed to include "specific requests for tutoring, lessons or sports camps in her Petition," and only asked for support for gifted and talented programs, "she should be precluded from receiving" the money. Thus, appellant avers that any costs not listed on the child support worksheet should be excluded, in order to preserve "the very essence" of Rule 9–203(f)(1).[3]

■ As appellee points out, appellant did not make this assertion below, and thus this claim has been waived. *See* Md. Rule 8–131(a) ("Ordinarily, the appellate court will not decide any ... issue unless it plainly appears by the record to have been raised in or decided by the trial court. . . .").

## II.

The central matter in dispute concerns the court's decision to include a total of $360.00 as an additional expense on Line

---

3. The rule provides, in part:

[C]urrent financial statements under affidavit, itemizing assets and liabilities and showing income (after taxes) and expenses, shall be filed by the litigants in all actions in which alimony, maintenance, or support, including child support, is claimed, unless an agreement thereon is alleged to exist. The statements shall be attached to all pleadings that make such claims and to responsive pleadings thereon and shall be considered a part of the formal pleadings.

11.c of a form used by the court, entitled "Worksheet A— Child Support Obligation: Shared." That sum represented an allocation by the court for a portion of the cost of discretionary activities such as music lessons, gifted and talented programs, camps, and remedial tutoring. Of that sum, appellant was obligated to pay his *pro rata* share, in the amount of $269.00. As we observed, appellant maintains that these are the kinds of expenses that are subsumed within the child support obligation calculated pursuant to the statutory child support Guidelines. *See* F.L. § 12–201 *et seq.*

In 1989, the Legislature enacted Maryland's Guidelines to comply with federal law and federal regulations. *Petrini v. Petrini,* 336 Md. 453, 460, 648 A.2d 1016 (1994); *Voishan v. Palma,* 327 Md. 318, 322, 609 A.2d 319 (1992). The Guidelines do not apply, however, when the parents have a monthly combined adjusted income in excess of $10,000.00. *Voishan,* 327 Md. at 331–32, 609 A.2d 319. Otherwise, use of the Guidelines is mandatory. *Wills v. Jones,* 340 Md. 480, 484, 667 A.2d 331 (1995); *Dunlap v. Fiorenza,* 128 Md.App. 357, 366, 738 A.2d 312, *cert. denied,* 357 Md. 191, 742 A.2d 520 (1999). Once the support award is established, the trial court may only modify child support payments if there is an affirmative showing of a material change in circumstances in the needs of the children or the parents' ability to provide support. *Unkle v. Unkle,* 305 Md. 587, 597, 505 A.2d 849 (1986).

In drafting the Guidelines, the Maryland Senate Judicial Proceedings Committee considered the *Development of Guidelines For Child Support Orders: Advisory Panel Recommendations and Final Report,* U.S. Department of Health and Human Services' Office of Child Support Enforcement. *Voishan,* 327 Md. at 322, 609 A.2d 319. This report explained that the Guidelines were needed for three reasons. One goal was to " 'remedy a shortfall in the levels of awards' that do not reflect the actual costs of raising children." *Voishan,* 327 Md. at 322, 609 A.2d 319 (citation omitted); *see* Robert G. Williams, *Guidelines for Setting Levels of Child Support Orders,* 21 Fam. L.Q. 281, 282, 284 (1987)(*"Setting Levels"*).

Indeed, national research indicted that court-ordered child support fell "well short of even the most minimal standards for costs of children." Williams, *Setting Levels*, 21 Fam. L.Q. at 284. The second goal in implementing the Guidelines was to " 'improve the consistency, and therefore the equity, of child support awards.' " *Voishan*, 327 Md. at 322, 609 A.2d 319. Studies demonstrated that the case-by-case method of awarding support resulted in "markedly different child support awards for obligors even if they h[ad] the same number of children and identical income levels." Williams, *supra*, *Setting Levels*, 21 Fam. L.Q. at 285. The third objective of the Guidelines was to " 'improve the efficiency of court processes for adjudicating child support. . . .' " *Voishan*, 327 Md. at 322, 609 A.2d 319.

The Legislature based the State's Guidelines on the Income Shares Model. *See* Senate Judicial Proceedings Committee, *Bill Analysis*, Senate Bill 49 (1989); *Voishan*, 327 Md. at 322, 609 A.2d 319. As Judge Chasanow explained for the Court in *Voishan*, 327 Md. at 322, 609 A.2d 319: "The conceptual underpinning of [the Income Shares] model is that a child should receive the same proportion of parental income, and thereby enjoy the standard of living, he or she would have experienced had the child's parents remained together." *See* Williams, *supra*, *Setting Levels*, 21 Fam. L.Q. at 292. Thus, "[c]hild support must cover a child's basic needs as the first priority, but, to the extent either parent enjoys a higher than subsistence level standard of living, the child is entitled to share the benefit of that improved standard." Williams, *supra*, *Setting Levels*, 21 Fam. L.Q. at 310.

The Guidelines carefully prescribe how the "basic child support obligation shall be determined in accordance with the [statutory] schedule of basic child support obligations;" the support obligation is then divided "between the parents in proportion to their adjusted actual incomes." F.L. § 12–204(a)(1). In cases of shared physical custody, the court must first determine the "adjusted basic child support obligation," by multiplying the "basic child support obligation by one and one-half." That sum is "divided between the parents in

proportion to their respective adjusted actual incomes." *See* F.L. §§ 12–204(f); 12–204(*l*).[4]

In order to implement the legislative objectives, a schedule in F.L. § 12–204(e) delineates a numeric calculation of the basic child support obligation, based on the number of children involved and the combined adjusted actual income of the parents. As we noted, this sum is divided between the parents "in proportion to their adjusted actual incomes." F.L. § 12–204(a)(*l*); *see Petrini,* 336 Md. at 461, 648 A.2d 1016; *Voishan,* 327 Md. at 323, 609 A.2d 319; *Reuter v. Reuter,* 102 Md.App. 212, 235, 649 A.2d 24 (1994).

The child support obligation is premised on estimates of adequate expenditures that married parents ordinarily spend on their children "as a proportion of household consumption," and the number of children in the household. *Setting Levels,* 21 Fam. L.Q. at 289; *see* Senate Judicial Proceedings Committee, *Bill Analysis,* Senate Bill 49 (1989); *Voishan,* 327 Md. at 322–23, 609 A.2d 319. Once the child support obligation is ascertained, the statute permits the addition of certain expenses to the Guidelines obligation. By statute, the judge *shall* add to the basic child support obligation any work-related child care expenses, pursuant to F.L. § 12–204(g), and extraordinary medical expenses, pursuant to F.L. § 12–204(h).

---

**4.** F.L. § 12–204(*l*) provides, in part:

(*l*) *Shared physical custody cases.*—(1) In cases of shared physical custody, the adjusted basic child support obligation shall first be divided between the parents in proportion to their respective adjusted actual incomes.

(2) Each parent's share of the adjusted basic child support obligation shall then be multiplied by the percentage of time the child or children spend with the other parent to determine the theoretical basic child support obligation owed to the other parent.

(3) Subject to the provisions of paragraphs (4) and (5) of this subsection, the parent owing the greater amount under paragraph (2) of this subsection shall owe the difference in the 2 amounts as child support.

\* \* \*

(5) The amount owed under paragraph (3) of this subsection may not exceed the amount that would be owed under subsection (k) of this section if the obligor parent were a noncustodial parent.

The court *may* also add school and transportation expenses, pursuant to F.L. § 12–204(i). These additional expenses are allocated between the parents in proportion to their adjusted actual incomes. *Voishan,* 327 Md. at 323, 609 A.2d 319; *Reuter,* 102 Md.App. at 235, 649 A.2d 24.

Under F.L. § 12–202(a)(2)(i), "[t]here is a rebuttable presumption that the amount of child support which would result from the application of the child support guidelines . . . is the correct amount of child support to be awarded." *See Petrini,* 336 Md.. at 460–61, 648 A.2d 1016 (citation omitted); *Walsh v. Walsh,* 333 Md. 492, 498, 635 A.2d 1340 (1994); *Dunlap,* 128 Md.App. 357, 738 A.2d 312. In order to rebut the presumption, the evidence must show that, in a particular case, "application of the guidelines would be unjust or inappropriate. . . ." F.L. § 12–202(a)(2)(ii); *see Petrini,* 336 Md. at 461, 648 A.2d 1016; *Dunlap,* 128 Md.App. at 366, 738 A.2d 312; *Reuter,* 102 Md.App. 212 at 235, 649 A.2d 24. To determine whether application of the Guidelines is inappropriate, the court "may" consider the terms of any separation agreement, payment of college expenses, and the parental obligation to support other children in the household. *See* F.L. § 12–202(a)(2)(iii)(1), (2). If the court finds that the application of the Guidelines would be unjust or inappropriate in a particular case, F.L. § 12–202(a)(2)(iv) requires the court to make a written or oral findings explaining the reasons why it has departed from the Guidelines, and "how this variance serves the best interests of the child." *Wills v. Jones,* 340 Md. 480, 484, 667 A.2d 331 (1995); *see Walsh,* 333 Md. at 501, 635 A.2d 1340.

In this case, the court increased the parties' child support obligation by adding a portion of the expenses for tutoring, summer camps, karate, music lessons, and gifted and talented programs to the child support obligation calculated under the Guidelines. The court apparently believed that F.L. § 12–204(i)' permitted the addition of such expenses. In effect, the court departed from the Guidelines when it increased the child support obligation to cover a portion of the costs of the children's activities, although the court did not indicate that it was relying on F.L. § 12–202 to do so, nor did it follow the

applicable statutory procedures. Therefore, we must determine whether the court was entitled to add the costs of such activities to the child support obligation calculated under the Guidelines. Alternatively, we shall consider the related question of whether the court was entitled to deviate from the Guidelines in order to enable the children to engage in these discretionary activities.

We begin by considering whether the expenses for the activities and the tutoring are the kinds of costs that may be added to the basic child support obligation under F.L. § 12–204(i), the statutory provision on which the trial court relied. The provision states:

(i) *School and transportation expenses.*—By agreement of the parties or by order of court, the following expenses incurred on behalf of a child may be divided between the parents in proportion to their adjusted actual incomes:

(1) any expenses for attending a special or private elementary or secondary school to meet the particular educational needs of the child; or

(2) any expenses for transportation of the child between the homes of the parents.

Additionally, as we noted earlier, F.L. §§ 12–204(g) and (h) are pertinent, because they also refer to expenses that the court shall consider as a supplement to the statutory child support obligation. These sections state, in part:

(g) *Child care expenses.*—(1) Subject to paragraphs (2) and (3) of this subsection, actual child care expenses incurred on behalf of a child due to employment or job search of either parent shall be added to the basic obligation and shall be divided between the parents in proportion to their adjusted actual incomes.

\* \* \*

(3) Additional child care expense may be considered if a child has special needs.

(h) *Extraordinary medical expenses.*—Any extraordinary medical expenses incurred on behalf of a child shall be

added to the basic child support obligation and shall be divided between the parents in proportion to their adjusted actual incomes.

Under F.L. § 12–201(h)(2), extraordinary medical expenses include "uninsured, reasonable, and necessary costs for orthodontia. . . ."

In the case of shared physical custody, the court may supplement the child support obligation with the same expenses. F.L. § 12–204(*l*)(4) provides:

> (4) In addition to the amount of the child support owed under paragraph (3) of this subsection, if either parent incurs child care expenses under subsection (g) of this section, extraordinary medical expenses under subsection (h) of this section, or additional expenses under subsection (i) of this section, the expense shall be divided between the parents in proportion to their respective adjusted actual incomes. The parent not incurring the expense shall pay that parent's proportionate share to:
>
> > (i) the parent making direct payments to the provider of the service; or
> >
> > (ii) the provider directly, if a court order requires direct payments to the provider.

Thus, the plain and unambiguous language of the statute authorizes the court to supplement the Guidelines obligation only for certain categories of expenses: child care; extraordinary medical expenses; the cost of attendance at a special or private elementary or secondary school; and transportation expenses. It follows that the court was not entitled to add to the Guidelines obligation the cost of discretionary activities such as camp, music lessons, tutoring, and gifted and talented programs, even if such activities are desirable or beneficial. Therefore, we hold that the court erred to the extent that it increased child support, above the Guidelines calculation, by adding a portion of the costs of these activities.

In reaching our conclusion that the statute does not authorize the court to increase the child support award to cover expenses for the kinds of extracurricular activities that are at

issue here, we are mindful that the underlying premise of the Guidelines is to achieve some degree of equity through uniformity. To that end, the Guidelines were designed to eliminate disparities in child support awards that varied with the perspectives of the particular judge hearing the case or depended on the advocacy skills of counsel. For example, one child might desire ballet lessons, while another might want to attend soccer camp. One court might think such opportunities are worthwhile, while another judge would not.

The statutory scheme was carefully crafted to protect the best interests of children by creating a rebuttable presumption that the Guidelines amount of support is the correct award. Although the court retains some measure of discretion to modify the child support award, that discretion is not unlimited. In *Petrini, supra*, 336 Md. at 460, 648 A.2d 1016, the Court recognized that the use of the Guidelines limits the role of the courts in deciding the particular amount of child support with respect to those levels of income to which the Guidelines apply. *See Voishan*, 327 Md. at 322, 331, 609 A.2d 319. What the Court said in *Voishan*, 327 Md. at 331, 609 A.2d 319, is also pertinent: "[A] reviewing court must also be mindful that the federal call for child support guidelines was motivated in part by the need to improve the consistency of awards. Thus, the trial judge has [some] latitude ... but not the unguided discretion of pre-guidelines cases...."[5] *See Reuter*, 102 Md.App. at 235, 649 A.2d 24 (stating that the "application of the guidelines is a straightforward mathematical exercise.").

We cannot sanction a result that would have the effect of thwarting the purpose of the Guidelines and instead encourage a case-by-case analysis of child support. To conclude otherwise would fly in the face of the important legislative objective of improving equity and consistency in child support awards.

---

5. We recognize that, in *Voishan*, the Court considered the child's expenses, which included costs for extracurricular activities. *Voishan*, however, was an above-Guidelines case, and therefore it is distinguishable from the case *sub judice* in a critical respect.

■ We next consider whether, alternatively, the court was entitled to deviate from the Guidelines and increase the child support obligation in order to enable the children to participate in their desired activities. In this regard, we view expenses for remedial tutoring and gifted and talented educational programs in a different light. Although the statute does not authorize the court to add the costs for such activities to the basic child support obligation, we believe that, in the appropriate case, the court may depart from the Guidelines to cover the costs of reasonable and necessary educational programs. We explain.

■ It is clear that, in an appropriate case, the court may require the parents to shoulder the expense of private school tuition. *See Witt v. Ristaino,* 118 Md.App. 155, 701 A.2d 1227 (1997). In *Witt,* the father challenged a court order requiring him to pay a portion of the costs of his children's private school education, in addition to the support he was obligated to pay under the Maryland Child Support Guidelines. Writing for this Court, Judge Cathell concluded that, based on F.L § 12–204(i)(1), a trial court may require parents to pay for private or parochial schooling, upon consideration of various factors, to meet the child's best interest and "particular educational need" *Id.* at 169–70, 701 A.2d 1227. The Court noted that the statute does not require that a "child must be laboring under some sort of disability or high ability" in order for the court to order payment of the child's special or private educational expenses as part of child support. *Id.* at 169, 701 A.2d 1227.

To be sure, tutoring and other academic programs are usually much less expensive than private or parochial school. If a court may assess the costs of private school as an additional expense under F.L. § 12–204(i), we believe the court may also depart from the Guidelines under F.L. § 12–202(a)(2) and require the parents to pay for less expensive, but equally imperative educational alternatives. Looking at the statute as a whole, we agree with appellee that "it defies logic that the Legislature would provide private school as the only

option when these programs can be obtained less expensively." Put another way, we do not believe the Legislature intended to restrict expenditure for a child's educational needs to those expenses incurred in a "school" building.

Accordingly, relying on F.L. § 12–202(a)(2), we are satisfied that a court has discretion to depart from the Guidelines in a given case, if it is satisfied that an academically challenged or gifted student requires remedial tutoring or advanced programming to meet the child's particular educational needs. Such expenses clearly do not have the character of ordinary extracurricular activities that are otherwise included in the basic child support obligation. Moreover, in an appropriate case, the court may also be justified in departing from the Guidelines to enable a youngster who excels in a particular area, whether art, music, or athletics, to pursue appropriate training to enhance the child's skills and development.

To justify a departure from the Guidelines, however, more than the loose use of labels is needed. In this case, we found virtually no evidence, other than the mother's testimony, establishing that the two older children are intellectually "gifted." Neither did we uncover evidence that their public school cannot meet their educational needs. Although the girls' mother claimed that the two older children would benefit from enrichment programming, it is safe to say that most children would benefit from participation in as many educational programs as possible.

Moreover, in the case *sub judice,* appellee's estimate of costs for all of the children's various activities far exceeded the $360.00 that the court allowed. Nevertheless, the court did not require the mother to spend the additional funds solely for academic programs. As a result, we do not know how the mother has used the funds.

Accordingly, we shall vacate the child support award, and remand for further proceedings. On remand, the court may consider additional evidence as to the special academic needs

of the children, as well as the costs of appropriate educational programming to meet their needs.

## III.

Appellant next contends that the court erred in ordering *in futuro* payment of orthodontic expenses. We disagree.

Janelle has been under the care of an orthodontist since 1998, and has already received an appliance commonly known as a retainer. She is periodically examined to determine precisely when she will be ready for the next phase of treatment. The orthodontist predicted that Janelle will need braces in a year or two, but she could not establish a definitive date, because such treatment depends on the child's progress. Thus, the court ordered the parties to pay Janelle's orthodontic expenses "if and when that becomes necessary, in proportion to their actual income, which is 25.3 percent for [appellee] and 74.7 percent for [appellant]." The court also reminded the parties that the order could be modified if the parties' income levels changed.

It is readily apparent that Janelle was already undergoing orthodontic care, and was then being monitored by her orthodontist so that she could begin further treatment at the optimal time. Because such treatment is relatively imminent, and a monthly payment plan has already been set by the orthodontist, we perceive no error in the court's decision to award the costs of orthodontic care, in proportion to the parties' income levels, as payments come due.

## IV.

Appellant contends that the trial court erred in ordering him to contribute $500.00 toward appellee's attorney's fees, because appellee had $6,000.00 in her savings account at the time of the hearing. We disagree.

Decisions concerning the award of counsel fees rest in the sound discretion of the trial court. *Petrini, supra,* 336 Md. at 468, 648 A.2d 1016; *Jackson v. Jackson,* 272 Md. 107,

111–12, 321 A.2d 162 (1974). An award of attorney's fees will not be reversed unless a court's discretion was exercised arbitrarily or the judgment was clearly wrong. *Broseus v. Broseus,* 82 Md.App. 183, 200, 570 A.2d 874 (1990).

F.L. § 12–103(a) provides that, in a child support case, "[t]he court may award to either party the costs and counsel fees that are just and proper under all the circumstances." Section (b) provides, in pertinent part:

(b) *Required considerations.*—Before a court may award costs and counsel fees under this section, the court shall consider:

(1) the financial status of each party;

(2) the needs of each party; and

(3) whether there was substantial justification for bringing, maintaining, or defending the proceeding.

Failure on the part of the court to consider the statutory criteria constitutes legal error. *Carroll County Dep't of Social Services v. Edelmann,* 320 Md. 150, 177, 577 A.2d 14 (1990). But, the "trial court does not have to recite any 'magical' words so long as its opinion, however phrased, does that which the statute requires." *Beck v. Beck,* 112 Md.App. 197, 212, 684 A.2d 878 (1996), *cert. denied,* 344 Md. 717, 690 A.2d 523, 345 Md. 456, 693 A.2d 354 (1997).

Here, the court determined that appellee was earning 33.7 percent of the parties' combined monthly income. In rendering its ruling, the court stated:

With regard to attorney fees, the Court also finds that [appellee] has incurred attorney fees. They are fair and reasonable. They [sic] Court will order $500 toward her attorney fees in this case. If that is not paid within 30 days the Court will reduce it to a judgment.

The Court also recognizes that [appellant] has incurred attorney fees and expenses which are fair and reasonable. The Court makes no award to him.

 In light of the parties' respective economic positions, we cannot say that the trial court's minimal award of attorney's fees was clearly erroneous or an abuse of discretion.

**JUDGMENT AFFIRMED IN PART, VACATED IN PART. CASE REMANDED TO THE CIRCUIT COURT FOR ANNE ARUNDEL COUNTY FOR FURTHER PROCEEDINGS CONSISTENT WITH THIS OPINION. COSTS TO BE DIVIDED EVENLY BETWEEN THE PARTIES.**