994 A.2d 487

**Brian K. BARE**

v.

**Abigail BARE.**

**No. 1783 Sept.Term, 2008.**

Court of Special Appeals of Maryland.

May 3, 2010.

308

Thomas G. Harrison, Bel Air, MD, for Appellant.

Clara E. Campbell, Elkton, MD, for Appellee.

Panel: JAMES R. EYLER, KEHOE, and J. FREDERICK SHARER (Retired, Specially Assigned), JJ.

J. FREDERICK SHARER, Judge (Retired, Specially Assigned).

Brian Bare, appellant, and Abigail Bare, appellee, settled by written agreement all issues pertaining to their divorce, including custody and child support, except for "uninsured medical expenses" of the children. Their agreement provided in that respect:

The parties agree to reserve on the issue of the parties' . . . for medical, dental, orthodontia, eyecare, hospitalization, counseling, and any other health care expenses that are not covered by insurance and the parties shall present said issue to the [Circuit] Court for determination.

The issue having thus been presented, the Circuit Court for Cecil County ordered Mr. Bare to pay basic child support in accordance with the applicable statutory schedule and, in addition, to pay one-half of their children's medical expenses not covered by insurance.

Challenging only that aspect of the divorce judgment, Mr. Bare presents the following two issues for our review, the first of which he characterizes as a question of first impression:

1. Did the trial court err in ordering Mr. Bare to pay, in addition to basic child support, one-half of the children's "ordinary" medical expenses, *i.e.*, expenses that do not qualify as extraordinary and are not otherwise covered by insurance?

2. Did the trial court err in admitting into evidence medical records and receipts covering the period after the Bares' separation?

We agree with Mr. Bare that the trial court erred in ordering payment of ordinary medical expenses; therefore, we shall vacate the orders regarding medical expenses without reaching the evidentiary question.

## FACTS and LEGAL PROCEEDINGS

The Bares were married on September 1, 1990, and separated on August 14, 2006. Three children-triplets—Brooke, Bronwin, and Blake—were born on April 19, 1999. On Febru-

ary 1, 2008, the Bares executed a written settlement agreement that resolved custody and support issues, but reserved the issue of post-separation uninsured medical expenses for resolution by the court, as we have noted, *supra.*

At an August 12, 2008 trial, only the medical expense issue was contested. Mr. Bare objected to paying any portion of medical expenses that do not qualify as "extraordinary," arguing that such expenses were covered by the basic child support obligation calculated under the child support guidelines. *See* Md.Code (1984, 2006 Rep. Vol., 2009 Cum. Supp.), Family Law (F.L.) § 12–101 *et seq.* Conceding that some of the medical expenses for which she sought reimbursement were "standard garden variety" expenses that could not be classified as extraordinary, Mrs. Bare asserted that it had been the routine practice in Cecil County for over "twenty-five years" for the court to order the sharing of all medical expenses, regardless of whether they qualified as extraordinary. She proposed an even division of such expenses, but contended that the court "certainly has authority" to apportion 83.1% of such expenses to Mr. Bare, because he earned that percentage of the combined family income.

The trial court entered a judgment of divorce requiring, *inter alia*, Mr. Bare to reimburse Mrs. Bare for $1,198.15, representing a one-half share of the "uninsured medical bills" that she paid after the separation, and, in the future, to "pay one-half (½) of the medical, optical, dental, orthodontia, hospitalization, prescriptions, counseling, and any other health care expenses ... that are not covered by insurance." Mr. Bare noted this timely appeal from that aspect of the judgment.

## DISCUSSION

### Determination of Child Support

Maryland's statutory child support scheme, codified at F.L. § 12–101 *et seq.*, is premised on an "income shares" model that "establishes child support obligations based on estimates of the percentage of income that parents in an intact household typically spend on their children." *Voishan v. Palma,* 327

Md. 318, 322–23, 609 A.2d 319 (1992).[1] "Consistent with this model, the legislature constructed the schedule in § 12–204(e), which sets forth the basic child support obligation for any given number of children based on combined parental income." *Id.* In addition to the monthly child support obligation calculated under that schedule, courts are authorized to require parents to pay an apportioned share of certain child care expenses,[2] "extraordinary" medical expenses, and certain school and transportation expenses.[3] The basic child support obligation calculated under the subsection (e) schedule and

**1.** The 2010 General Assembly enacted revisions to the child support scheme, with an effective date of October 1, 2010, which have been presented to the Governor. *See* H.B. 500, 2010 Leg., 427th Sess. (Md. 2010) and S.B. 252, 2010 Leg., 427th Sess. (Md. 2010) (enrolled and cross-filed bills). This is the first update to the mandatory child support schedule since its enactment in 1988. However, none of the changes affect the relevant language regarding medical expenses that we interpret and apply in this case. Moreover, child support calculated under the statutory schedule will continue to be "based on economic estimates of child-rearing expenditures as a proportion of household consumption," according to Fiscal and Policy Notes to H.B. 500 and S.B. 252, prepared by the Department of Legislative Services. Whereas the existing child support schedule reflects estimates "developed in 1988 by Dr. Thomas Espenshade using national data on household expenditures from the 1972–73 Consumer Expenditure Survey conducted by the U.S. Bureau of Labor Statistics," the new schedule relies on "[a] Congressionally mandated federal study on child-rearing costs . . . conducted in 1980 by Dr. David Betson using data from 1980–86," which was "updated to 2008 price levels" and "adjusted to account for Maryland's above average housing costs." *Id.*

**2.** F.L. § 12–204(g) provides in pertinent part that "actual child care expenses incurred on behalf of a child due to employment or job search of either parent shall be added to the basic obligation and shall be divided between the parents in proportion to their adjusted actual incomes."

**3.** F.L. § 12–204(i) provides:
(i) **School and transportation expenses.**—By agreement of the parties or by order of court, the following expenses incurred on behalf of a child may be divided between the parents in proportion to their adjusted actual incomes:
(1) any expenses for attending a special or private elementary or secondary school to meet the particular educational needs of the child; or
(2) any expenses for transportation of the child between the homes of the parents.

adjusted for these expenses is commonly known as the "guidelines amount" of child support.

At issue in this appeal is F.L. § 12–204(h), permitting the court to require payment of extraordinary medical expenses, which provides:

(h) **Extraordinary medical expenses.**—

(1) Any actual cost of providing health insurance coverage for a child for whom the parents are jointly and severally responsible shall be added to the basic child support obligation and shall be divided by the parents in proportion to their adjusted actual incomes.

(2) Any extraordinary medical expenses incurred on behalf of a child shall be added to the basic child support obligation and shall be divided between the parents in proportion to their adjusted actual incomes.

"Extraordinary medical expenses" is statutorily defined to mean "uninsured expenses over $ 100 for a single illness or condition." F.L. § 12–201(g)(1). Such expenses include "uninsured, reasonable, and necessary costs for orthodontia, dental treatment, asthma treatment, physical therapy, treatment for any chronic health problem, and professional counseling or psychiatric therapy for diagnosed mental disorders." F.L. § 12–201(g)(2).

"To further the purpose of the Guidelines, their use is mandatory if the parents have a monthly combined adjusted income of $10,000 or less." *Smith v. Freeman,* 149 Md.App. 1, 19, 814 A.2d 65 (2002). *See* F.L. § 12–202(a)(1); F.L. § 12–204(a)(1). "There is a rebuttable presumption that the amount of child support which would result from the application of the[se] guidelines ... is the correct amount of child support to be awarded." F.L. § 12–202(a)(2)(i). Nevertheless, this "presumption may be rebutted by evidence that the application of the guidelines would be unjust or inappropriate in a particular case." F.L. § 12–202(a)(2)(ii); *see Beck v. Beck,* 165 Md.App. 445, 449–50, 885 A.2d 887 (2005). A trial court may not depart from the guidelines amount of child support, either by decreasing or increasing that obligation,

unless it "determines that the application of the guidelines would be unjust or inappropriate" and "stat[es] the reasons for departing from the guidelines," specifying on the record what the amount of child support would be under the guidelines, "how the order varies from the guidelines," and "how the finding serves the best interests of the child." F.L. § 12–202(a)(2)(v). *See Voishan,* 327 Md. at 322, 609 A.2d 319; *Beck,* 165 Md.App. at 450, 885 A.2d 887.

The legislature adopted this comprehensive framework governing child support with several goals in mind.

In February of 1989, the General Assembly enacted the Maryland Child Support Guidelines as an emergency measure. These guidelines were adopted in conformance with the Child Support Enforcement Amendments of 1984, 42 U.S.C. §§ 651–667 (1982 & Supp. II 1984), and federal regulations, 45 C.F.R. § 302.56 (1990). The guidelines serve several purposes. First, the guidelines were intended to remedy the low levels of most child support awards relative to the actual cost of rearing children. Second, the guidelines were intended to improve the consistency and equity of child support awards. Third, the guidelines were intended to improve the efficiency of court processes for adjudicating child support awards. Additionally, the failure to adopt such guidelines could have resulted in the loss of up to $35 million in federal funds for Aid to Families with Dependent Children.

*Tannehill v. Tannehill,* 88 Md.App. 4, 11, 591 A.2d 888 (1991) (citations omitted). *See Petrini v. Petrini,* 336 Md. 453, 460, 648 A.2d 1016 (1994). *See generally* 3–33 *Family Law and Practice* § 33.08[2] (Matthew Bender 2009) (reviewing standardization of statutory provisions permitting deviation from mandatory child support guidelines adopted under federal mandate).

### 1. Award of Ordinary Medical Expenses

█ In the words of his brief, Mr. Bare contends that "the trial court erred as a matter of law in ordering [him] to contribute and pay 50% of non covered medical expenses of

the minor children that were not 'extraordinary medical expenses' as defined under" F.L. § 12–204(h). He does not dispute that the trial court had authority to add to the amount of child support due under the § 12–204(e) schedule an amount representing his apportioned share of any extraordinary medical expenses. He further acknowledges that some of the medical expenses covered by the judgment qualify as extraordinary medical expenses. But, Mr. Bare complains, the trial court improperly increased his child support by requiring him to pay a share of other medical expenses that do not meet the definition of extraordinary; in his view, these ordinary medical expenses are expenses that the child support calculated under the F.L. § 12–204(e) guidelines schedule is designed to cover. We agree.

When construing a statute, "we normally look only to the language of the statute unless such language is unclear or ambiguous. While our goal in statutory interpretation is to 'ascertain and effectuate the intention of the legislature,' the 'primary source [for discerning that legislative intent] is the statute itself.'" *Beck*, 165 Md.App. at 450, 885 A.2d 887. In *Boswell v. Boswell*, 118 Md.App. 1, 35–36, 701 A.2d 1153 (1997), *aff'd on other grounds*, 352 Md. 204, 721 A.2d 662 (1998), we vacated an order requiring a father to pay all unreimbursed medical expenses for his children, in addition to the support calculated under the child support schedule in subsection 12–204(e). But, unlike Mr. Bare, Boswell did not argue that the court lacked jurisdiction to add ordinary medical expenses onto that basic child support obligation, probably because he had agreed to divide all medical expenses. *See Boswell*, 118 Md.App. at 35–36, 701 A.2d 1153. Rather, Boswell challenged the court's order that he pay all of the medical expenses, not merely an apportioned share of them based on respective incomes, without explaining its reasons for doing so, as required by F.L. § 12–202(a)(2)(iv). *See id.* at 34, 701 A.2d 1153.

Pointing out that the statutory framework "makes it very clear that a departure from the Guidelines must be supported

by the court's written finding or a specific finding on the record stating the reasons for departure," we held that trial court erred in "order[ing] appellant to pay the standard amount of child support under the Guidelines in addition to all of the children's unreimbursed medical expenses," because it "stated no reasons for declining to split extraordinary medical expenses according to income, nor reasons for ordering appellant to pay any unreimbursed medical expenses not classified as extraordinary[.]" *Id.* at 35–36, 701 A.2d 1153. Although our decision rested on the court's lack of explanation for allocating all medical expenses to one parent, our discussion makes it clear that any order requiring a parent to pay for ordinary medical expenses is an unauthorized departure from the guidelines unless the court finds special circumstances and explains on the record why such an award is appropriate, in the format specified by F.L. § 12–202(a)(2)(v). *See id.*

Our rationale in *Horsley v. Radisi,* 132 Md.App. 1, 750 A.2d 692 (2000), is also instructive. The trial court required the father to pay, in addition to the child support payment calculated under the statutory schedule, his proportionate share of expenses for various extracurricular activities selected for their educational value, including summer camps and music lessons. *See id.* at 25, 750 A.2d 692. We vacated that award on the ground that it, too, was an unauthorized increase in the guidelines amount of child support, relying on a jurisdictional analysis of the child support scheme that is equally applicable to this case. *See id.* at 26–27, 29–30, 750 A.2d 692.

In *Horsley,* we began our review of the statutory framework by pointing out that a child support obligation calculated under the subsection (e) schedule "is premised on estimates of adequate expenditures that married parents ordinarily spend on their children 'as a proportion of household consumption,' and the number of children in the household." *Id.* at 23–24, 750 A.2d 692. In order to ensure that child support was set consistently and at such realistic levels, the General Assembly deliberately restricted judicial authority to deviate from that amount of child support by limiting such "add-ons" to the narrow list of expenses spelled out in F.L. subsections 12–

204(g) (child care), 12–204(h) (extraordinary medical expenses), and 12–204(i) (school and transportation expenses). *See id.* at 26–27, 750 A.2d 692. Writing for the Court, Judge Hollander explained:

[T]he plain and unambiguous language of the statute authorizes the court to supplement the [§ 12–204(e)] obligation only for certain categories of expenses: child care, extraordinary medical expenses; the cost of attendance at a special or private elementary or secondary school; and transportation expenses. It follows that the court was not entitled to add to the Guidelines obligation the cost of discretionary activities such as camp, music lessons, tutoring, and gifted and talented programs, even if such activities are desirable or beneficial. Therefore, we hold that the court erred to the extent that it increased child support, above the Guidelines calculation, by adding a portion of the costs of these activities.

*Id.* at 26, 750 A.2d 692.

We emphasized that this construction of the child support subtitle is consistent with the legislature's goals in adopting a standardized framework for child support awards.

[T]he underlying premise of the Guidelines is to achieve some degree of equity through uniformity. To that end, the Guidelines were designed to eliminate disparities in child support awards that varied with the perspectives of the particular judge hearing the case or depended on the advocacy skills of counsel. For example, one child might desire ballet lessons, while another might want to attend soccer camp. One court might think such opportunities are worthwhile, while another judge would not.

The statutory scheme was carefully crafted to protect the best interests of children by creating a rebuttable presumption that the Guidelines amount of support is the correct award. Although the court retains some measure of discretion to modify the child support award, that discretion is not unlimited. . . . [T]he use of the Guidelines limits the role of the courts in deciding the particular amount of support with

respect to those levels of income to which the Guidelines apply. . . .

We cannot sanction a result that would have the effect of thwarting the purpose of the Guidelines and instead encourage a case-by-case analysis of child support. To conclude otherwise would fly in the face of the important legislative objective of improving equity and consistency in child support awards.

*Id.* at 26–27, 750 A.2d 692 (citations omitted).

For the same reasons that the trial court in *Horsley* lacked authority to require payments for extracurricular activities that do not fall within F.L. § 12–204(i), the trial court in this case lacked authority to require Mr. Bare to pay for medical expenses that do not meet the definition of "extraordinary" under F.L. § 12–201(g) and § 12–204(h). As we recognized in both *Boswell* and *Horsley,* the General Assembly has carefully restricted the type of expenses warranting an increase of the child support obligation established via the schedules in F.L. § 12–204(e). In the case of medical expenses, a court only has authority to order payment for extraordinary medical expenses, as that term is narrowly defined in F.L. § 12–201(g).

In this instance, the court's overbroad award of all medical expenses, without regard to whether they are ordinary or extraordinary, effectively requires Mr. Bare to pay twice for ordinary medical expenses. As indicated by the exclusion of such expenses from the short list of explicitly authorized "add-ons," the child support payments imposed under the F.L. § 12–204(e) schedule are designed to cover typical costs of raising children, including ordinary medical expenses such as the medications and co-payments for which Mrs. Bare sought reimbursement. Allowing courts to make such an award as an exercise of "equitable powers," as suggested by Mrs. Bare, would require us to ignore the legislatively imposed limits on deviations from the child support guidelines, at the risk of undermining the critical objective of standardizing child support obligations. Indeed, to the extent that such awards have been made routinely in Cecil County, as counsel for Mrs. Bare

proffered to the trial court, and to this Court at oral argument, there is an intolerable possibility of precisely the type of inconsistency that F.L. § 12–204 was enacted to eliminate.

We are not persuaded by Mrs. Bare's contention that this construction of the statute will open the proverbial floodgates for piecemeal litigation concerning which expenses qualify as ordinary medical expenses covered by basic child support and which qualify as extraordinary medical expenses that may be apportioned between the parents. To the contrary, recognizing that courts may increase the scheduled child support obligation established in F.L. § 12–204(e) only for the three narrow categories of expenses identified in subsections (g), (h), and (i) actually prevents requests based on other non-qualifying expenses. In most instances the statute makes it clear which medical expenses are extraordinary, eliminating the need to litigate (either retrospectively regarding past expenses or prospectively regarding future expenses) whether a particular expense meets the definition. We emphasize that FL § 12–204(g)(1) provides that "Extraordinary medical expenses" means "uninsured *expenses* over $100 for a single illness or condition." (Emphasis added.) Because the General Assembly enacted *"expenses"* in the plural, it would be possible to aggregate discrete aspects of care or treatment of *"a single illness or condition"* to reach the $100 threshold.

Of course, our interpretation of F.L. § 12–204 should not be misunderstood to mean that a court may **never** make an award of ordinary medical expenses in a guidelines case. As we tacitly recognized in *Boswell,* the court may enforce an agreement to pay such expenses. *See Boswell,* 118 Md.App. at 35, 701 A.2d 1153. Alternatively, there may be some instances in which a significant number of ordinary medical expenses fall upon a parent who is in precarious financial circumstances, potentially warranting a deviation from the guidelines due to those unique difficulties, in accordance with F.L. § 12–202(a)(2). But in either of those situations, the court must still make an explicit finding that such special circumstances exist, with a particularized explanation of what the increase is and why it is in the child's best interest. *See*

F.L. § 12–202(a)(2)(v); *Boswell,* 118 Md.App. at 35–36, 701 A.2d 1153.

That is not what happened here. As this record shows, there was no agreement regarding medical expenses; to the contrary, Mr. Bare consistently objected to paying for any medical expenses that do not qualify as extraordinary. Moreover, Mrs. Bare did not contend that there were special circumstances warranting the court's exercise of authority under F.L. § 12–202; nor did the court make any of the findings necessary to justify such an order.[4] We pointed out in *Goshorn v. Goshorn,* 154 Md.App. 194, 838 A.2d 1247 (2003), that

> the court may deviate from the guidelines if their application would be "unjust or inappropriate." [F.L. § 12–202](a)(2)(ii). But, in making such a determination the court "shall make a written finding or specific finding on the record stating the reasons for departing from the guidelines." *Id.* § (a)(2)(v). The finding shall state: "[T]he amount of child support that would have been required under the guidelines; how the order varies from the guidelines; and how the finding serves the best interests of the child. *Id.*"

*Id.* at 219, 838 A.2d 1247.

We therefore hold that the trial court erred in departing from the child support guidelines. Specifically, the court did not have authority to require Mr. Bare to pay, in addition to the required child support, for medical expenses that do not qualify as extraordinary medical expenses. *See* F.L. § 12–204(h). Furthermore, it should not have divided responsibility

---

**4.** Mrs. Bare suggests in her brief that, because the children are triplets, the cost of co-payments for doctor's visits and medications "are too great a financial burden for one parent to bear alone[.]" Although a showing of special circumstances arising from "exponential" medical costs incurred for ordinary expenses such as co-payments might potentially serve as a factual basis for a request to deviate from the guidelines, Mrs. Bare did not make this argument below. Nor did she invoke F.L. § 12–202 as grounds to depart from the guidelines by ordering Mr. Bare to pay half of such ordinary medical expenses.

for extraordinary medical expenses equally between the parents, rather than apportioning responsibility according to the Bares' respective incomes, effectively decreasing Mr. Bare's child support obligation by doing so, without stating any reasons. *See id.*; F.L. § 12–202(a)(2).

Because the court did not differentiate between extraordinary and other medical expenses, and did not apportion expenses according to the Bares' adjusted actual incomes, we are unable to determine how much of the $1,198.15 that Mr. Bare was ordered to pay for past medical expenses represents improper reimbursement for ordinary medical expenses, or what Mr. Bare's properly apportioned share of extraordinary medical expenses should be.

Accordingly, we shall vacate the orders concerning medical expenses in the divorce judgment. We shall remand for additional proceedings to resolve the Bares' claims with respect to past extraordinary medical expenses and to impose an appropriate order with respect to future extraordinary medical expenses.

### 2. *Admissibility of Medical Records and Receipts*

Given our decision to vacate the medical expenses orders and remand for further proceedings, we need not resolve Mr. Bare's secondary complaint that

the trial court erred in allowing medical expenses and records of receipts . . . from 10/06 through 8/08 in evidence over [his] objection . . . where the records were not certified business records, contained hearsay, and had never, prior to the parties' appearance in Court, been presented nor provided to [him] or his counsel.

As a result of this appeal, and our remand, the parties will have ample opportunity to consider (and hopefully to resolve) which medical expenses qualify as extraordinary, and which do not. If further evidentiary proceedings are required, Mr. Bare will have a fresh opportunity to challenge any medical receipts in light of our ruling, and subject to the rules of

evidence relating to the introduction of documents and records.

JUDGMENT OF THE CIRCUIT COURT FOR CECIL COUNTY VACATED AS TO ORDERS RELATING TO PAYMENT OF ORDINARY MEDICAL EXPENSES NOT COVERED BY INSURANCE; CASE REMANDED FOR FURTHER PROCEEDINGS CONSISTENT WITH THIS OPINION.

COSTS TO BE PAID BY APPELLEE.