609 A.2d 319

**John VOISHAN**

v.

**Margaret Voishan PALMA.**

**No. 99, Sept. Term, 1991.**

Court of Appeals of Maryland.

July 22, 1992.

William M. Ferris, argued and on brief (Lynn T. Krause, Krause & Ferris, on brief), Annapolis, for appellant.

Ralph S. Tyler, Deputy Atty. Gen., argued and on brief (J. Joseph Curran, Jr., Atty. Gen. and Carolyn A. Quattrocki,

Asst. Atty. Gen., on brief), Baltimore, as amicus curiae for the State.

Bruce A. Kaufman, Baltimore, argued and on brief (Thomas C. Ries, Baltimore and Beverly Anne Groner, Bethesda, on brief), as amicus curiae for American Academy of Matrimonial Lawyers.

Argued before MURPHY, C.J., and ELDRIDGE, RODOWSKY, McAULIFFE, CHASANOW, KARWACKI and ROBERT M. BELL, JJ.

CHASANOW, Judge.

John and Margaret Voishan were divorced on June 26, 1981, by decree of the Circuit Court for Anne Arundel County. Margaret was awarded custody of their two daughters and John was ordered to pay $250 per week toward the girls' support. Over four years later, an order dated October 7, 1985 increased the amount of John's obligation for the support of both children to $1400 per month. The circuit court's order also awarded John certain detailed visitation rights.

On March 8, 1991, the circuit court's intercession was again sought to address John's request to find Margaret in contempt for violating the visitation order as well as Margaret's motion to modify child support. The Honorable Raymond G. Thieme, Jr. presided at that hearing and shortly thereafter entered an order finding that Margaret was not in contempt of court. That order also increased John's child support obligation for the one daughter who was still a minor from $700 per month to $1550 per month. John then appealed the modification of child support to the Court of Special Appeals. Because of the important issues raised on appeal, this Court granted certiorari before consideration by the intermediate appellate court. While Margaret failed to file an appellee's brief or respond to John's oral arguments, both the Maryland Chapter of the American Academy of Matrimonial Lawyers and the Attorney General of Maryland filed amici curiae briefs and presented oral argument.

This dispute requires the Court, for the first time, to address Maryland Code, (1984, 1991 Repl.Vol.) Family Law Article §§ 12–201 *et seq.* (the "guidelines").[1] The General Assembly enacted these guidelines in 1989 to comply with federal law and regulations. *See* 42 U.S.C. §§ 651–667 (1982 & 1984 Supp. II) and 45 C.F.R. § 302.56 (1989). The federal mandate required that the guidelines be established and "based on specific descriptive and numeric criteria and result in a computation of the support obligation." *Id.* When drafting the guidelines, the Maryland Senate Judicial Proceedings Committee had before it *Development of Guidelines For Child Support Orders: Advisory Panel Recommendations and Final Report,* U.S. Department of Health and Human Services' Office of Child Support Enforcement. This report explained that the need for the guidelines was threefold: (1) to "remedy a shortfall in the level of awards" that do not reflect the actual costs of raising children, (2) to "improve the consistency, and therefore the equity, of child support awards," and (3) to "improve the efficiency of court processes for adjudicating child support...."

After considering several different models recommended by the Advisory Panel on Child Support Guidelines, the General Assembly chose to base Maryland's guidelines on the Income Shares Model. *See* Senate Judicial Proceedings Committee, *Bill Analysis,* Senate Bill 49 (1989). The conceptual underpinning of this model is that a child should receive the same proportion of parental income, and thereby enjoy the standard of living, he or she would have experienced had the child's parents remained together. *Id. see also* Robert G. Williams, "Child Support Guidelines: Economic Basis and Analysis of Alternative Approaches," *Improving Child Support Practice* I–12 to I–13 (A.B.A.1986). Accordingly, the model establishes child support obligations based on estimates of the percentage of income that parents

---

1. Unless otherwise specified, all statutory references are to Maryland Code, (1984, 1991 Repl.Vol.) Family Law Article.

in an intact household typically spend on their children. *Id.* Consistent with this model, the legislature constructed the schedule in § 12–204(e), which sets forth the basic child support obligation for any given number of children based on combined parental income.

Following the Income Shares Model, Maryland's guidelines first require that the trial judge determine each parent's monthly "adjusted actual income." Section 12–201(d) states:

> " 'Adjusted actual income' means actual income minus:
>
> (1) preexisting reasonable child support obligations actually paid;
>
> (2) except as provided in § 12–204(a)(2) of this subtitle, alimony or maintenance obligations actually paid; and
>
> (3) the actual cost of providing health insurance coverage for a child for whom the parents are jointly and severally responsible."

After determining each parent's monthly "adjusted actual income," the judge then adds these two amounts together to arrive at the monthly "combined adjusted actual income" of the parents. *See* § 12–201(e). Having calculated the combined adjusted actual income of the parents, the judge can then determine whether that figure falls within the range of incomes found in the schedule of § 12–204(e). If the figure is within the schedule, the judge then locates the corresponding "basic child support obligation" for the given number of children. Where the monthly income falls between two amounts set forth in the schedule, § 12–204(c) dictates that the basic child support obligation is the same as the obligation specified for the next highest income level. The judge then divides this basic child support obligation between the parents in proportion to each of their adjusted actual incomes. § 12–204(a). The judge must then add together any work-related child care expenses, extraordinary medical expenses, and school and transportation expenses and allocate this total between the parents in proportion to their adjusted actual incomes. § 12–204(g)–(i). The

amount of child support computed in this manner [2] is presumed to be correct, although this presumption may be rebutted by evidence that such amount would be unjust and inappropriate in a particular case. § 12–202(a)(2). In the instant case, evidence was presented at the March 8, 1991 hearing that John now earns $145,000 per year, while Margaret's annual income is $30,000. John does not contend that his actual income should be reduced by any expenses identified in § 12–201(d). Therefore, he computes a "combined adjusted actual income" of $175,000 a year or $14,583 per month in his argument to this Court. This combined income exceeds $10,000 per month, which is the highest income provided for in § 12–204(e). The legislature addressed this situation in § 12–204(d), which says: "If the combined adjusted actual income exceeds the highest level, specified in the schedule in subsection (e) of this section, the court may use its discretion in setting the amount of child support."

■ While John's primary contention is that Judge Thieme abused his discretion in setting the monthly obligation at $1550, he first argues that the judge could not modify the amount of child support without making a threshold finding that there was a "material change of circumstance." *See* § 12–104(a). At the hearing before Judge Thieme, John's trial counsel never suggested that the parties' circumstances had not materially changed. In effect, John's trial counsel admitted that a material change in circumstances existed when she told Judge Thieme, "We're not arguing that [Margaret] shouldn't have an increase." Moreover, in more than doubling the amount of child sup-

---

**2.** This is the proper procedure for cases other than shared physical custody cases. § 12–204(k). Where the parents share physical custody of the child, as defined by § 12–201(i), the judge shall multiply the basic child support obligation by one and one-half to determine the "adjusted basic child support obligation." *See* §§ 12–201(j) and 12–204(f). The judge then divides that amount "between the parents in proportion to their respective adjusted actual incomes." § 12–204(*l*)(1). After that, the judge calculates which parent owes payment to the other by applying the provisions of § 12–204(*l*)(2)–(5).

port, Judge Thieme implicitly found that a change of circumstances had been shown. *See* § 12–202(b).

Having disposed of John's preliminary argument, we now reach his primary contention. John contends that the $1550 monthly child support award is inconsistent with the spirit and intent behind the Income Shares Model, and concludes that Judge Thieme abused his discretion in awarding that amount. John maintains that Judge Thieme accurately found that the parties' earnings created a ratio of 83 to 17 for John's and Margaret's respective percentages of their $175,000 combined annual income. John contends, however, that Judge Thieme erred in the manner in which he applied these percentages to arrive at the amount of $1550 per month for John's share of the obligation. Judge Thieme examined expense sheets for each of the parties and concluded that the "reasonable expenses of the child" were $1873 each month. The judge then calculated 83% of that figure and rounded John's share of the obligation down to $1550.

■ John argues here, as he did below, that a "reasonable approach" would have been for the trial judge to assume that the maximum basic child support obligation listed in the schedule is not only applicable to combined monthly incomes of $10,000, but also applies to those in excess of $10,000 per month. Under the schedule in § 12–204(e), the maximum basic child support obligation of $1040 per month is presumptively correct for parties who have a combined monthly income of $10,000. John argues that $1040 per month should also provide the presumptively correct basic child support obligation for all combined monthly incomes over $10,000. While we believe that $1040 could provide the presumptive *minimum* basic award for those with combined monthly incomes above $10,000, we do not believe that the legislature intended to cap the basic child support obligation at the upper limit of the schedule. *See, e.g., Hinshelwood v. Hinshelwood,* 564 So.2d 141 (Fla. 5th DCA 1990); *In re Marriage of Van Inwegen,* 757 P.2d 1118, 1120 (Colo.App.1988). Had the legislature intended to

make the highest award in the schedule the presumptive basic support obligation in all cases with combined monthly income over $10,000, it would have so stated and would not have granted the trial judge discretion in fixing those awards.   Further, John's proposed approach creates an artificial ceiling and itself defeats the guidelines' policy that the child enjoy a standard of living consonant with that he or she would have experienced had the parents remained married.   We are unpersuaded by John's argument that the legislature meant for all children whose parents earn more than $10,000 per month to have the same standard of living as those whose parents earn $10,000 per month.

Alternatively, John argues that Judge Thieme should have extrapolated from the guidelines to determine what the support obligation would have been had the schedule extended up to the parties' $14,583 monthly income. John notes that at the upper levels in the guidelines, the basic child support obligation for one child increases by $5 for every $100 rise in combined adjusted actual income.[3] Extrapolating on that basis, John argues that the basic child support obligation would be $1270 per month ($4583/

---

**3.** This is true for combined adjusted actual incomes of $9000 through $10,000 per month:

| Combined Adjusted Actual Income | 1 Child | Combined Adjusted Actual Income | 1 Child |
| --- | --- | --- | --- |
| 9000 | 989 | 9550 | 1017 |
| 9050 | 992 | 9600 | 1020 |
| 9100 | 994 | 9650 | 1022 |
| 9150 | 997 | 9700 | 1025 |
| 9200 | 999 | 9750 | 1027 |
| 9250 | 1002 | 9800 | 1030 |
| 9300 | 1004 | 9850 | 1032 |
| 9350 | 1007 | 9900 | 1035 |
| 9400 | 1009 | 9950 | 1037 |
| 9450 | 1012 | 10000 | 1040 |
| 9500 | 1014 | | |

100 × $5 plus $1040). John also acknowledges that under the guidelines, in addition to the basic child support obligation—whatever that is computed to be, he has an obligation to pay 83% of the additional work-related child care expenses which, in the instant case, are $400 per month. *See* § 12–204(g). Taking 83% of the $1270 basic child support obligation plus 83% of the $400 work-related child care expenses, John argues, renders his portion of his daughter's support to be $1386 per month. Although slightly more generous than his earlier argument, which would leave the judge with no discretion, John's second contention is essentially that this Court should significantly restrict the judicial discretion granted by § 12–204(d) and allow judges very little latitude in deviating from the extrapolation method. John asks this Court to hold that Judge Thieme abused his discretion when he set the award $164 higher than the amount computed by John's strict extrapolation theory. While we believe that the trial judge should consider the underlying policies of the guidelines and strive toward congruous results, we think that Judge Thieme did not abuse his discretion in fixing the amount of this award.

The legislature has clearly enunciated that the policies of the guidelines are those embodied in the Income Shares Model. John also argues that this model relies on the assumption that the percentage of income expended on children decreases as parental income increases, and therefore the General Assembly could not have intended to permit an award in this case to exceed 10.4% of combined monthly income, the percentage represented by the schedule's maximum support obligation for one child. The legislative history, however, indicates that the General Assembly did not intend to impose a maximum percentage of income or any similar restraint on the judge's discretion in setting awards where the parents' combined adjusted actual income exceeds $10,000 per month. In the hearings on the guidelines, the General Assembly was asked repeatedly to circumscribe the discretion granted in § 12–204(d). The Fair

Family Law Association of Maryland testified that "[t]he proposed statute leaves families with income above $10,000 a month ($120,000 a year) with absolutely no guidelines," and suggested that the schedule be amended to provide that "for family incomes greater than $10,000 per month the basic child support obligation shall be the same percentage of total family income as for income of $10,000 per month [10.4% for one child]." Senate Judicial Proceedings Committee, S.B. 49 Bill File (1989). Several members of Family Law Section of the Montgomery County Bar Association testified that "[l]eaving the amount of child support in upper income cases to the discretion of the court will not help us to predict results or settle cases.... We suggest that the table be extended, or that guidelines of some sort be provided." *Id.* Notwithstanding these pleas, the General Assembly did not change § 12–204(d) or address any specific comment to these concerns. Rather, it chose to rely on judicial discretion. We agree with the Attorney General's conclusion in its amicus curiae brief that

"[i]mplicit in this judgment is the view that at very high income levels, the percentage of income expended on children may not necessarily continue to decline or even remain constant because of the multitude of different options for income expenditure available to the affluent. The legislative judgment was that at such high income levels judicial discretion is better suited than a fixed formula to implement the guidelines' underlying principle that a child's standard of living should be altered as little as possible by the dissolution of the family."

While the legislature specifically rejected the request for more explicit formulae for incomes above the schedule, the general principles from which the schedule was derived should not be ignored. *See* § 12–202(a), which provides that "in *any* proceeding to establish or modify child support ... the court shall use the child support guidelines set forth in this subtitle." (emphasis added). To effectuate the legislative intent to improve the consistency of child support awards, trial judges should bear in mind the guidelines'

underlying principles when deciding matters within their discretion. Extrapolation from the schedule may act as a "guide," but the judge may also exercise his or her own independent discretion[4] in balancing

> "the best interests and needs of the child with the parents' financial ability to meet those needs. Factors which should be considered when setting child support include the financial circumstances of the parties, their station in life, their age and physical condition, and expenses in educating the children." (Citations omitted).

*Unkle v. Unkle,* 305 Md. 587, 597, 505 A.2d 849, 854 (1986). These principles expressed in the pre-guidelines *Unkle* decision are consistent with the underlying concept that the child's needs be met as they would have been absent the parents' divorce.

While we reject John's argument that Judge Thieme abused his discretion because he placed too *little* reliance on John's suggested mechanical extrapolation from the schedule, we also decline to adopt the position taken by the Maryland Chapter of the American Academy of Matrimonial Lawyers (the AAML) in their amicus curiae brief. The AAML basically argues that Judge Thieme abused his discretion because he placed too *much* reliance on a mechanical application of the guidelines. The AAML contends that the economic data from which the figures in the schedule were derived did not include empirical evidence of the actual household expenditures for children of high income parents. Because the research and data used in constructing the Income Shares Model did not contemplate these high-range combined parental incomes, the AAML argues, the model provides *no* assistance in calculating the proper amount of child support. Thus, the AAML concludes, "the trial court

---

4. See *Battersby v. Battersby,* 218 Conn. 467, 590 A.2d 427, 429–30 (1991) where the Supreme Court of Connecticut held that it would not construe a statute to require strict extrapolation where the legislature included no such provision.

erred when it applied a rigid formula (relative percentage of parents' income)...."

In support of this conclusion, the AAML points out that the legislature did not include in § 12–204(d) the phrase which appears in § 12–204(a)(1), (g)(1), (h), and (i)—"shall be divided between the parents in proportion to their adjusted actual incomes." While the argument is not expressly articulated, the AAML seems to suggest that Judge Thieme should not have divided the child support obligation in an 83 to 17 ratio. We believe that Judge Thieme acted properly in apportioning the obligation based upon the parties' respective percentages of their combined adjusted actual income. Moreover this action was consonant with the principle, expressed in the Income Shares Model as well as pre-guidelines caselaw, that each parent "share the responsibility for parental support in accordance with their respective financial resources." *Rand v. Rand,* 280 Md. 508, 517, 374 A.2d 900, 905 (1977). Finally, Judge Thieme did not look only to the parties' incomes and calculate a particular percentage thereof. Rather, he determined the reasonable needs of the child and then calculated each parent's proportionate share.

The Court in *Rand* declined to "mandate any specific formula by which the chancellor is to calculate the amount of support to be charged against each parent" and left to the chancellor's discretion the manner of assessing financial resources. *Id.* The legislature has modified *Rand*'s holding, as § 12–201 now defines the manner in which the trial judge should determine each party's "adjusted actual income." This would seem to be the initial step in *any* proceeding to establish or modify child support, as the judge must first determine whether the parents' combined adjusted actual income falls within, above, or below the schedule range. Although § 12–204(d) itself does not contain specific language requiring that the judge divide the child support obligation "between the parents in proportion to their adjusted actual incomes," this principle certainly underlies the Income Shares Model. Consequently, we be-

lieve that Judge Thieme properly calculated the support obligation and divided it between the parties in proportion to their incomes.

In *Rand* and other cases decided before the enactment of the guidelines, the determination or modification of a child support award was left to the sound discretion of the trial court. *Rand,* 280 Md. at 517, 374 A.2d at 905. As quoted from *Unkle* above, courts were to balance the best interests and needs of the child with the parents' ability to satisfy those needs, and to make awards based on the circumstances of each individual case. *Unkle,* 305 Md. at 597, 505 A.2d at 854. Referring to alimony or child support in pre-guidelines cases, this Court had repeatedly said that

> " ' "[i]n making such an award the court can only use judicial discretion. *Of course, there is no special statute or rule governing this discretion.* It must be exercised to the necessary end of awarding justice and based upon reason and law." ' " (Emphasis added).

*Bowis v. Bowis,* 259 Md. 41, 44, 267 A.2d 84, 86 (1970) (quoting *Burton v. Burton,* 253 Md. 233, 237, 252 A.2d 472, 473 (1969), in turn quoting *Waters v. Waters,* 191 Md. 436, 440–41, 62 A.2d 250, 253 (1948)). We do not believe that the legislature intended that the schedule in § 12–204(e) "govern" a judge's discretion by dictating a cap or mechanical extrapolation. However, we also do not believe that the legislature intended that the principles from which the schedule was derived should be ignored when a judge exercises discretion under § 12–204(d).

██ While awards made under § 12–204(d) will be disturbed only if there is a clear abuse of discretion, a reviewing court must also be mindful that the federal call for child support guidelines was motivated in part by the need to improve the consistency of awards. Thus, the trial judge has somewhat more latitude than that argued by John, but not the unguided discretion of pre-guidelines cases as advocated by the AAML. Rather, we agree with the Attorney General's position that the guidelines do establish a rebuttable presumption that the maximum support award under

the schedule is the minimum which should be awarded in cases above the schedule.[5] Beyond this the trial judge should examine the needs of the child in light of the parents' resources and determine the amount of support necessary to ensure that the child's standard of living does not suffer because of the parents' separation. Further, the judge should give some consideration to the Income Shares method of apportioning the child support obligation. Consequently, we conclude that Judge Thieme properly exercised his discretion in receiving evidence of the parents' financial circumstances, considering the needs of the child, and then apportioning the "reasonable expenses of the child."

Finally John contends that, even if Judge Thieme did not abuse his discretion in the manner in which he set the award, the evidence upon which he based the award was legally insufficient. This Court addressed a similar argument in *Rothschild v. Strauss*, 257 Md. 396, 263 A.2d 511 (1970). The father there argued "that 'the Chancellor did not base his award on any substantial evidence in the record,' the mother having supplied, so the father says, 'boxcar figures' as to the monthly needs." *Id.* at 398, 263 A.2d at 512. The Court said that the short answer to the father's contention was found in Maryland Rule 886a. That Rule was subsequently readopted, without substantive change, as Md.Rule 8–131(c), which provides that an appellate court "will not set aside the judgment of the trial court on the evidence unless clearly erroneous, and will give due

---

5. The Maryland guidelines were "patterned after the Colorado child support guidelines." Senate Judicial Proceedings Committee, *Floor Report,* Senate Bill 49 (1989). While it appears the Colorado Supreme Court has not yet spoken on the issue, that state's intermediate appellate court has repeatedly held that in cases above the schedule "there is a rebuttable presumption that the basic child support obligation at the uppermost level of the guidelines is the *minimum* presumptive amount of support." *In re Marriage of LeBlanc,* 800 P.2d 1384, 1388 (Colo.App.1990) (emphasis in original). Further, that court has held that it is an abuse of discretion for a trial judge to mechanically extrapolate from the guidelines without making a determination regarding the needs of the child. *In re Marriage of Van Inwegen,* 757 P.2d 1118, 1121 (Colo.App.1988).

regard to the opportunity of the trial court to judge the credibility of the witnesses." The Court in *Rothschild* then held:

> "the chancellor did have before him evidence from the mother of costs for support of the child. It is obvious that the chancellor gave very careful consideration to the mother's testimony, the original agreement, the changes in the cost of living, changes by virtue of change in age insofar as the young lady is concerned and her actual needs. It is significant in this regard that although the chancellor increased the support payments, he did not accept the support figure requested by the mother. We cannot say that the chancellor's judgment in this case was 'clearly erroneous'."

*Id.*

The case at hand is markedly similar to that in *Rothschild*. Judge Thieme received testimony from Margaret about her daughter's expenses, accompanied by a list enumerating each. This list identified food, shelter, and clothing as the primary expenses, but also itemized expenses for transportation, extracurricular activities, outside sports teams, and religious instruction.[6] Rather than adopt these numbers, Judge Thieme recessed to review the evidence and said, "I'm not going to shoot from the hip without looking at the expenses and making my own determination as to what this—what this child reasonably needs for monthly

---

**6.** Discussing the economic studies of spending in intact households, Robert G. Williams noted that because most expenditures made on behalf of children are intertwined with household expenses (i.e., food, shelter, and transportation), many costs of the children become hidden in the larger pool of household expenses. Consequently, Williams concludes "the full children's share of expenditures in those categories is generally not recognized, with the result that even parents may underestimate the true costs of bringing up their own children." Robert G. Williams, "Guidelines for Child Support Orders," *Family Law Quarterly*, Volume XXI, No. 3, Fall 1987. Margaret, who shares her household only with the child whose support is sought, attributed a quarter of her household expenses to the child. The evidence certainly could justify compensating Margaret for her estimate of household expenses attributable to the child.

**334**

expenses." Judge Thieme gave due consideration to the evidence before him, and we will not set aside his judgment.

JUDGMENT OF THE CIRCUIT COURT FOR ANNE ARUNDEL COUNTY AFFIRMED. COSTS TO BE PAID BY APPELLANT.

McAULIFFE, Judge, concurring.

I concur in the result. I do not believe that the legislature intended to authorize trial judges to ignore basic policy decisions made by the legislature with respect to the equitable establishment of child support, or to authorize virtually unlimited discretion as soon as the combined adjusted actual income of the parties exceeds $10,000 per month.

As the Court's opinion points out, the legislature adopted an Income Shares Model when it enacted Senate Bill 49 in 1989. The Bill Analysis prepared for the Senate Judicial Proceedings Committee explains the basic concepts of this model in the following language:

The Income Shares model is based on the premise that the child should receive the same proportion of parental income he or she would receive if the parents lived together. Under this model, a basic child support obligation is computed based on the combined income of the parents (replicating total income in an intact household). This basic obligation is then prorated in proportion to each parent's adjusted gross income. Prorated shares of child care costs and extraordinary medical expenses are added to each parent's basic obligation.

The economic assumptions underlying this model are based on recent studies estimating expenditures on children as a proportion of household consumption.

The chancellor followed one of these policies when he allocated the share of each parent in accordance with their share of the total income. He apparently ignored, however, the "recent studies estimating expenditures on children as a proportion of household consumption" which underlay the legislature's approved model, and instead reverted to an

earlier practice of attempting to determine the needs of a child based upon the custodial parent's estimated allocation to the child of a portion of fixed expenses of the family. As the Court of Special Appeals cogently observed in *Tannehill v. Tannehill,* 88 Md.App. 4, 11, 591 A.2d 888 (1991), one of the principal purposes for adopting the guidelines was "to improve the consistency and equity of child support awards." *See also Richardson v. Richardson,* 12 Va.App. 18, 401 S.E.2d 894, 895 (1991) (child support guidelines were intended to "decrease the disparity in the amount of awards, which, without the guidelines, range from unreasonably low to unrealistically high").

I believe the Income Shares Model adopted by the legislature provides informed guidance for the fixing of child support obligations even when the combined adjusted actual income exceeds $10,000 per month, while still granting the discretion referred to in § 12–204(d) of the Family Law Article, Maryland Code (1991 Repl.Vol.). The schedule of basic child support obligations, based upon data that the legislature found acceptable, shows that above the poverty level the percentage of parental income dedicated to child-rearing expenses decreases as the parental income increases. I do not agree with the father that the curve which can be plotted from the schedule must be projected to establish child support obligations beyond the limits of the schedule; that argument is contrary to the express intention of the legislature to grant a measure of discretion to the court when incomes exceed the highest income listed on the schedule. But that does not mean that the entire concept of the schedule, or its underlying data, should be jettisoned as soon as the upper limit of the schedule is passed. The legislative objective may be carried forward by using the schedule to establish presumptive maximum and minimum amounts for basic child support.

Specifically, I suggest that the amount calculated in accordance with the schedule for child support when the combined income equals $10,000 per month should serve as the presumptive floor for awards based upon combined

income in excess of that amount. It makes no sense to hold the parents who would be required to provide $1,040 per month for the support of a child when their combined monthly income is $10,000 would be permitted to pay less if their income were $10,050 per month. Similarly, I believe the presumptive maximum base payment for one child should be 10.4 percent of the combined income of the parents, which is the percentage that the maximum scheduled payment bears to the maximum combined income ($1,040 to $100,000).

As I have noted above, the studies upon which the schedule is based demonstrate that the percentage of combined income of families living together that is dedicated to support of a child decreases as the income increases. Thus, it would hardly be inequitable to the child to establish as a maximum the percentage fixed by the schedule for a lesser amount of combined income. It should be kept in mind, however, that it is the *percentage* of income that remains as a constant presumptive ceiling—the amount of dollars to be paid for the support of the child obviously increases as the combined income increases.

I certainly would not fault a chancellor for utilizing a projection of the schedule for combined incomes above $10,000 a month as a presumptive child support payment where other factors did not suggest a different amount, but I agree that such a projection is not required. The legislature expressly reserved a considerable range of discretion to the chancellor when the combined monthly income of the parties exceeds $10,000, and thus there is no authority for requiring a mathematical projection. It was, however, the intent of the legislature that this discretion be exercised in a manner consistent with the principles approved by the passage of subtitle 2 of Chapter 12 of the Family Law Article (Child Support Guidelines). Accordingly, the presumptive maximum and minimum support payments should be dictated by those policies.

Applying these principles to this case, the presumptive minimum base payment would be $1,040 (the payment es-

tablished by the schedule for $10,000), and the presumptive maximum would be $1,517 (10.4 percent of combined income of $14,583). Adding $400 of child care expenses to the presumptive maximum figure produces a total of $1,917, and multiplying that amount by 83 percent to arrive at the contribution to be made by the father produces a total presumptive maximum payment of $1,591. The monthly payment ordered in this case was $1,550. Although calculated by a method which I believe is at variance with the approach intended by the legislature, the payment ordered here falls within the range of discretion which I believe the legislature intended to grant to trial judges, and I would therefore affirm the decision in this case.

ELDRIDGE, J., joins in this opinion.