801 A.2d 1080

Tyoka JACKSON

v.

Tarsha LaShay PROCTOR.

No. 02694, Sept. Term, 2000.

Court of Special Appeals of Maryland.

June 28, 2002.

William J. Howard (Howard & Marcus, on the brief), Hyattsville, for appellant.

Nat N. Polito (Leftwich & Douglas, P.L.L.C., on the brief), Washington, DC, for appellee.

Argued before DAVIS, HOLLANDER, and BARBERA, JJ.

HOLLANDER, Judge.

This appeal pits Tyoka Jackson, appellant, against Tarsha LaShay Proctor, appellee, with respect to an order requiring appellant to pay monthly child support of $2500 for the parties' child, Taila LaShay Proctor–Jackson. The parties were not married when Taila was born on June 27, 1995.[1]

In this "above guidelines" case, we must consider what constitutes an appropriate amount of child support when the

1. In the father's brief, the child's first name is spelled "Tailia." In the mother's brief, the child's first name is spelled "Tyla." We shall use the spelling of "Taila," which appears in the mother's petition for custody and the Order of December 11, 2000. We also note that, with respect to appellee's first name, several of the documents in appellee's appendix use the spelling of "Tasha," but we believe the correct spelling is actually "Tarsha."

non-custodial parent is a wealthy, professional athlete whose earned income far exceeds the maximum income to which the child support guidelines apply; the current expenses of the child are less than the maximum award available under the guidelines, and less than the sum awarded by the court; and the custodial parent lacks the economic means to incur large expenses for the child.

The litigation originated in the fall of 1997, when appellee filed a petition in the Circuit Court for Prince George's County, seeking, *inter alia,* "reasonable child support." Following two hearings before a domestic relations master, the circuit court adopted the master's recommendation and ordered appellant to pay child support of $2500 per month. Appellant subsequently noted this appeal, presenting one question for our consideration:

Did the trial court err in awarding child support of $2,500 per month without a factual basis establishing the child's needs when the award exceeded the Maryland Child Support Guidelines?

For the reasons discussed below, we shall affirm.[2]

## FACTUAL SUMMARY[3]

As we noted, Taila was born to the parties, out of wedlock, on June 27, 1995. Since birth, appellee has had primary care and custody of the child.

---

**2.** In her brief, appellee phrases the issues as follows:

 I. Whether Appellant's prior support of the Master's Recommendation of an award of $2,500 in monthly child support prohibits him from seeking reversal of the award on appeal.

 II. Whether the trial court erred in awarding Appellee $2,500 per month in child support when the record evidence of expenses for the child [was] less than $2,500.

The answer to appellee's second question is subsumed in our discussion of the issue presented by appellant. In light of our resolution of that issue, we do not reach appellee's first question.

**3.** Appellant did not submit a record extract, as required by Maryland Rule 8–501(a). Instead, he moved to waive the filing of a record extract, which appellee opposed. Appellee also provided us with an

From the inception of the litigation, appellant has earned a substantial salary as a professional football player with the Tampa Bay Buccaneers. During the litigation, appellee was a full-time student at Pennsylvania State University. Although appellee worked part-time, she had a rather small income by any standard, and it was particularly small as compared to appellant's income.

In the fall of 1997, appellee filed a petition seeking custody of Taila and "reasonable child support." At the time of the *pendente lite* hearing on April 8, 1998, appellant was earning approximately $18,000 per month, while appellee was earning approximately $16,000 annually. Therefore, the parties had a combined monthly income of $21,193. Accordingly, the master ordered appellant to pay monthly child support of $1,750.

Thereafter, the master held a merits hearing on June 21, 1999, at which both parties testified. They agreed that appellant had been paying, voluntarily, $2500 per month in child support, although he was only obligated to pay $1750 per month under the *pendente lite* order. According to appellee, the extra money was meant to cover the child's monthly tuition of about $510 for a Montessori school.

The evidence showed that appellee was a student at Pennsylvania State University. She expected to graduate in December 2000, with two degrees: Bachelor of Arts and Masters in Fine Arts. Appellee supported herself with student loans and part-time employment. In 1998, she earned approximately $11,000 from her part-time job, had student loans that covered her tuition, and grants of about $4500.

In addition to the child's tuition expenses, appellee claimed that she incurred monthly medical expenses of $390.00, not covered by insurance, for the child's medications for a chronic ear infection problem. The mother also testified that she spent about $10 a week in gas to transport the child, and

---

Appendix, because of appellant's failure to provide the Record Extract. We subsequently issued an order to appellant to show cause why we should not assess costs and counsel fees in regard to preparation of the Appendix. That matter is pending.

incurred attorney's fees of almost $1500 in the underlying litigation.

At the time of the merits hearing, appellant was about to enter his fifth season as a professional football player. He testified that he had a three-year contract with Tampa Bay, dated September 16, 1998, pertaining to the 1998, 1999, and 2000 football seasons. Pursuant to the contract, he had an average salary of $710,000 for the three years, exclusive of bonuses. His base salary in 1998 was $600,000, and he also received an additional $150,000 in bonuses for that year. Therefore, in 1998, he had a gross annual income of $750,000 from his position as a football player. The contract also provided appellant with a base salary of $500,000 for the 1999 season, and a base salary of $750,000 for the 2000 season, in addition to bonus opportunities. Appellant maintained, however, that his income depended on his ability to make the team in a given year.

Appellant entered into evidence appellee's handwritten financial statement of April 8, 1999, prepared by her without the aid of counsel, on which she listed the following estimate of monthly expenses for the child: Rent $200; Telephone $80; Food $300; Clothing $120; Medical, Dental $50; Transportation $30; Child care expense $525; and Recreation $45. The financial statement showed total monthly expenses of $1,350.00 for the child, exclusive of unreimbursed monthly medical expenses.

Appellee did not explain how she arrived at the rent expense of $200 or the telephone expense of $80. For example, the record does not show whether appellee allocated a portion of her rent and phone expenses to the child, or whether those sums represent 100 percent of the cost of these particular necessities.[4] In any event, the expenses were basically consistent with what the mother could afford, but were not necessarily consistent with what she would have liked to afford.

---

4. Given the amount of the rent, it would appear that the $200 figure represents the portion attributed to the child.

The master issued her first Report and Recommendations on July 14, 1999 (the "First Report").[5] The master found that the mother had an annual income of $16,946. The mother's income was based on her earnings as a waitress and "borrowed income of $5843.00 in excess of her tuition and fees." The master also found that the father had an annual income of $597,379 in 1998.[6]

In the First Report, the master observed that the mother's Financial Statement, was not prepared with legal assistance, nor had the mother intended to submit it in evidence. Indeed, the master said it was "so poorly prepared that the Master believes that it does not reflect the plaintiff's actual expenses for the minor child. But, the Plaintiff had not provided any better itemization of expenses."

Although the evidence showed that appellant's income had virtually tripled since the time of the *pendente lite* hearing, as the master's finding of his annual income reflected, the master calculated child support with reference to a combined monthly income of $21,193, which corresponded to the parties' combined monthly income at the time of the *pendente lite* hearing. The master also "presumed" that the child had total monthly expenses of $4,000. Extrapolating from the child support guidelines, the master arrived at a monthly support obligation of $3880 for appellant. *See* Md.Code (1999 Repl.Vol., 2000 Supp.), § 12–204 of the Family Law Article ("F.L.").

As the master recognized, "[t]he issue in this case is not the ability of [appellant] to support his daughter, rather the amount of support that she needs." Mindful of the uncertainty of the father's future as a football player, the master also said that "any substantial change in circumstances [as to appellant's status] would be a basis to modify child support...." But, the master observed that such uncertainty "is

5. The docket shows that the First Report was filed on August 4, 1999.

6. As we noted earlier, appellant's gross income for 1998 was $750,000. Due to unrelated real estate losses, however, appellant's reported income on his 1998 federal tax returns was $597,379.

not a basis to establish less than reasonable child support based on his current financial circumstances." Accordingly, the master proposed that appellant pay monthly child support of $2,500.

In the First Report, the master said, in pertinent part:

[Appellee] argues that child support shall be set on an extrapolation of the guidelines chart. However, in *Voishan v. Palma,* 327 Md[.] 3118 [sic] [318], 609 A[.]2d 319 (1992) and *Bagley v. Bagley,* 98 Md[.]App[.] 18, 632 A[.]2d 299 [229] (1993)[,] the Maryland Appellate Courts have held that setting support in cases where the combined income exceeds $10,000 per month is based upon the needs of the children. The support cannot be less than would be allowed under the maximum levels of the guidelines. While the Court may consider the extrapolation of the guidelines, the Court must consider whether the suggested monthly expenses under the extended guidelines reflect the actual needs of the children.

\* \* \*

The law provides that this child is entitled to enjoy a standard [of living based] on the father's ability to provide and not limited to the expenses that the mother is able to afford.

\* \* \*

Based on the Master's familiarity of expenses for children, she finds that a reasonable contribution at this time is $2,500 per month.

On July 26, 1999, the mother filed exceptions to the Master's First Report; appellant did not file any exceptions. Appellee asserted that, because of the amount of her income and the amount of child support, "the child has been limited to plaintiff's life style." Further, she complained, in relevant part:

In short, the minor child has not enjoyed a standard of living commensurate with the father's financial ability to provide. Indeed, as demonstrated by the modest financial statement that was introduced at the *pendente lite* hearing, and reintroduced by [the father] at the hearing of June 21,

1999, the child's standard of living has been limited to the expenses that plaintiff is able to afford based on her income. If the Master's recommendations are adopted, the child will have to go without most of the activities she would have enjoyed were her parents together, while the defendant enjoys a surplus each month. This situation is not in keeping with the best interests of the child, nor with the purpose of child support guidelines. The Master's Recommendations as to child support, therefore, is in error and the plaintiff's Exceptions must be granted.

In the meantime, by order dated August 3, 1999, the court, among other things, adjudicated appellant as the father of Taila. The court also ordered appellant to pay monthly child support of $2500, effective July 1, 1999.

On August 30, 1999, appellant filed his "Opposition to [Appellee's] Exceptions to the Report and Recommendations of the Family Division Master." He stated, in pertinent part: "[Appellant] believes that the findings of fact and conclusions of law of [the master] are supported by the evidence and are not clearly erroneous." In an "Amended Memorandum in Opposition to [Appellee's] Exceptions to the Report and Recommendations of the Family Division Master," filed February 15, 2000, the father said: "The Defendant moves this Court to affirm the recommendations of the Domestic Relations Master as issued," and asks "[t]hat the Recommendations be ADOPTED."

Following an exceptions hearing on February 17, 2000, the circuit court issued an order dated March 15, 2000, remanding the matter to the master. In pertinent part, the circuit court directed the master to "provide a detailed basis upon which the award of $2,500 in child support was made."

On July 28, 2000, the master held a second hearing, although no new evidence was presented. Instead, the lawyers presented argument. The mother's attorney argued, in part:

We argued before you that the difficulty in the case was [appellee's] income didn't allow her to incur the kinds of expenses that a child of parents making this kind of money

would normally—the expenses that a parent would pay. The testimony was that she was making $11,000 in 1998 and so we could not put in a financial statement that—she had student loans—we couldn't put in a financial statement that showed expenses that were way beyond these expenses.

\* \* \*

Now, certainly defendant was making $710,000, the guideline approach was $4,000.... And for this kind of income, that isn't a lot of child support and this would allow the plaintiff and the minor child to enjoy the standard of living that the defendant enjoys. We could then have the ballet lessons, the voice lessons, the nice automobile, the living in a nice apartment that we couldn't show with the financial statement from April of '98 which, as the Court notes in the recommendations was prepared by [appellee] on a pro se basis. And that was the argument, that is the argument, that it doesn't make any sense to require a party to come in and say, this is exactly how I will spend the money to reach the standard of living that is enjoyed by the defendant. That's why we have a guideline and that's why we extrapolate.

And so we argued, and we continue to argue that the $2,500 isn't sufficient to put this child at the standard of living, if there isn't a voluntary—if it's not voluntary on the part of the defendant, there should be excess money to put away and to spend so the child enjoys that standard of living the defendant enjoys, if the parents had been together. It doesn't make any difference that the child is born out of wedlock, the law doesn't consider that.

This child deserves to enjoy the same standard of living as if these parents were together and the only way to do that is to extrapolate from the guideline[s] and allow this mother to spend that kind of money and that's the essence of our argument.

The father's attorney argued:

....We're here today for the Court to make a review of the transcript and the evidence and determine what the child's

needs are. I've reviewed the transcript and believe that there are only three pieces of evidence in the record that reflect a child's needs. The largest and most comprehensive is the financial statement. . . .

The father's attorney complained that the evidence failed to show whether the mother's entire rent was $200, in which case she attributed the whole cost to the child, or whether the $200 represented the child's share of the rent. The father's lawyer also disputed the reasonableness of the $80 allocated to the child for the phone, noting that "a toddler is not making phone calls on her own."

As to child care, appellant's lawyer said:

The . . . child care expense [is] $525. On page 24 of the transcript, . . . [appellee] testified that she was spending $[510] a month in a Montessori school. . . .

There is no way of know[ing] whether child care expense is the same $500 number that she references in the Montessori school or whether it's in addition to that, since there was no testimony telling us how the financial statement was modified in light of the oral testimony given.

Generally, the father's counsel complained about the speculative nature of the mother's expenses, including medical expenses. But, he did not challenge the $300 monthly expense for food and sundries, the mother's claim of $120 for clothing per month, or her monthly transportation expenses of about $30.

Appellant's lawyer concluded:

That series of numbers and the testimony represents the only evidence in this trial as to the child's needs. No combination of numbers will get us to $2,500 a month. I believe that the Court should look at the evidence, look at the speculation that is required to extract or create some of these numbers and make a determination as to child support based upon the child's needs, not upon a theory that there should be some kind of extrapolation when the income equals a number above what the guideline[s] provide for.

On August 31, 2000, the master issued another Report and Recommendations (the "Second Report"), which was filed on September 11, 2000. The master again recommended that appellant pay monthly child support of $2500. The Second Report stated, in part:

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

1) Pursuant to the mathematical extrapolation of the child support guidelines chart . . ., the defendant's child support obligation would be $3,880.00 per month. The Court in, *Voishan v. Palma,* 327 [Md.] 318, 609 A.2d 319 (1992) and *Bagley v. Bagley,* 98 Md.App. 18, 632 A.2d 299 [229] (1993) held that while the Court may use an extrapolation of the guidelines, the calculation of child support above the maximum income level on the chart does not presumably establish the correct amount of child support, and the Court must consider the child's needs. The minimum child support obligation based on the child support guidelines at $10,000 per month would be $1,905.00 [7]

2) The plaintiff earns $1,412.16 per month based upon her earnings during school vacations and her loans for living expenses as she attends college. *The defendant's gross income is $597,379.00 per year as a professional football player.*[8]

3) Because the only financial statements submitted for the plaintiff's expenses was prepared by [mother] without assistance of counsel, the Master was unable to establish the actual needs for the child.

The Master recognizes that even with most carefully drafted financial statement, [sic] [mother's] present needs are relatively low considering her status as a full-time

---

7. The parties agree that where the combined parental income is $10,000 per month, the monthly child support obligation is $1040, not $1905.

8. As we noted earlier, appellant's gross income in 1998 was actually considerably higher, but he had investment losses that reduced his taxable income.

college student. The child is entitled to a reasonable standard of living based upon the parties' income. Because the defendant earns a very high income at this time, the child is entitled to share in that luxury of income. Accordingly, the defendant's child support obligation should not be establish[ed] at the minimum allowed under the guidelines as if the parties only had $10,000 per month to support the child. Nor should the child support be limited only to what the plaintiff's expenses are before receiving child support. But without any testimony as to the needs of the child, establishing child support became the Master's best guess. The recommendation of child support at the rate of $2,500.00 per month will afford the child $30,000.00 per year, a relatively healthy amount of child support for a five year old child. It represents 5% of the defendant's gross monthly income.

(Emphasis added).

Thereafter, appellant filed exceptions to the recommendation. He urged the court to "enter an order commensurate with the evidence presented in the Master's hearing in an amount of $1,040.00 per month retroactive to the initial filing of this action." We pause to note that appellant had not excepted to the master's initial recommendation of $2500 in monthly child support. Indeed, he vigorously opposed appellee's exceptions to that exact recommendation, and he had been paying the sum of $2500 voluntarily, since the time of the *pendente lite* hearing, although support was set at $1750.

Appellee opposed the father's exceptions. She argued, *inter alia*, that appellant's monthly income had increased from $18,000 to $55,000 since the time of the *pendente lite* hearing. She also asserted that there was "ample support" in the record for the award of $2500 per month, and claimed that "it is not in the best interests of the child for the support obligation to be constrained by the mother's current expenses [for] the child."

Pursuant to its Order dated December 11, 2000, and based on its review of the record, the trial court affirmed the

master's recommendation of an award of child support in the total amount of $2,500 per month. This appeal followed.

We shall include additional facts in our discussion.

## DISCUSSION

### I.

Appellant contends that the trial court erred or abused its discretion in awarding monthly child support of $2,500, because the master could not ascertain the actual needs of the child, and thus speculated as to the appropriate award of child support. In addition, appellant contends that "[t]he concept of a sharing of the anticipated benefits of a family's economic advancement is not relevant as anticipated by *Voishan* [*v. Palma*, 327 Md. 318, 609 A.2d 319 (1992)], as the parties were not, and have never been, married or in a family relationship."

In addressing appellant's contentions, it is useful to put them in context, by reviewing the purpose of the child support guidelines, although this is an "above guidelines" case.

To comply with federal law, the General Assembly enacted Maryland's Child Support Guidelines (the "Guidelines") in 1989, contained in F.L. § 12–201 et seq. *See Petrini v. Petrini,* 336 Md. 453, 460, 648 A.2d 1016 (1994); *Voishan v. Palma,* 327 Md. 318, 322, 609 A.2d 319 (1992); *Barton v. Hirshberg,* 137 Md.App. 1, 16, 767 A.2d 874 (2001); *see also* C. Nicholson & C. Little, "Past, Present and Future Child Support Guidelines in Maryland," Md. Bar Journal (May/June 2002), at 41 ("Nicholson and Little"). The purpose of the guidelines is: 1) "to remedy a shortfall in the level of awards that do not reflect the actual costs of raising children; 2) to improve the consistency, and therefore, the equity of child support awards, and 3) to improve the efficiency of court processes for adjudicating child support." *Voishan,* 327 Md. at 322, 609 A.2d 319. Because the Legislature regarded the Guidelines as "necessary for the immediate preservation of the public health and safety ...," Nicholson and Little, at 41, the Guidelines went into effect on the date of their enactment.

■ The Guidelines use the income shares model. *Barton,* 137 Md.App. at 16, 767 A.2d 874. That model "establishes child support obligations based on estimates of the percentage of income that parents in an intact household typically spend on their children." *Voishan,* 327 Md. at 322–23, 609 A.2d 319.

When the parents have a combined monthly adjusted actual income of $10,000 or less, use of the Guidelines to determine child support is mandatory. *See* F.L. § 12–204(e); *see Wills v. Jones,* 340 Md. 480, 484, 667 A.2d 331 (1995); *Voishan,* 327 Md. at 331–32, 609 A.2d 319; *Horsley v. Radisi,* 132 Md.App. 1, 21, 750 A.2d 692 (2000). The schedule in F.L. § 12–204(e) applies to a "range" of "combined adjusted actual income," up to a maximum income of $10,000 per month. *Voishan,* 327 Md. at 323–24, 609 A.2d 319.

■ Here, the parents' monthly combined adjusted actual income exceeds $10,000. Therefore, the Guidelines do not apply. *Barton,* 137 Md.App. at 17, 767 A.2d 874. Instead, the court may exercise "its discretion in setting the amount of child support." F.L. § 12–204(d); *see Voishan,* 327 Md. at 324, 609 A.2d 319; *Barton,* 137 Md.App. at 17, 767 A.2d 874; *Chimes v. Michael,* 131 Md.App. 271, 288–89, 748 A.2d 1065, *cert. denied,* 359 Md. 334, 753 A.2d 1031 (2000).

■ In *Chimes,* this Court noted that " '[t]he legislative history and case law do not obscure the fact that the Legislature left the task of awards above the guidelines to the Chancellor precisely because such awards defied any simple mathematical solution.' " *Chimes,* 131 Md.App. at 289, 748 A.2d 1065 (*quoting Bagley v. Bagley,* 98 Md.App. 18, 39, 632 A.2d 229 (1993), *cert. denied,* 334 Md. 18, 637 A.2d 1191 (1994)). We will not disturb the trial court's determination as to child support, absent legal error or abuse of discretion. *See Ware v. Ware,* 131 Md.App. 207, 240, 748 A.2d 1031 (2000); *Bagley,* 98 Md.App. at 39, 632 A.2d 229.

■ In the instant case, because the parties' combined adjusted actual income is well above the maximum monthly income level of $10,000 to which the Guidelines apply, the

court had discretion with respect to the amount of child support. *Collins v. Collins,* No. 120, Sept. Term, 2001, 144 Md.App. 395, 434, 798 A.2d 1155 (2002). We readily conclude that the court did not abuse its discretion in setting the award at $2500 per month.

To be sure, the expenses incurred by the mother for the child were not as particularized as appellant or the master would have liked. But, they clearly were not extravagant. Moreover, there was no indication that the mother sought excessive child support as a means to support herself. To the contrary, the expenses were consistent with what the mother could afford, which was not very much.

Appellant's position puts the mother, proverbially speaking, "between a rock and a hard place." The father complains that the child support award should not exceed the child's expenses. The mother, however, has endeavored to live within her meager means. She did not spend what she did not have. Although she could have incurred debt to inflate or create expenses for the child, and to give the child the benefit of the wealthy lifestyle available to appellant, she did not do so. Because the mother adjusted her lifestyle to her income, and did not incur expenses that she could not afford, appellant has turned that laudable conduct against appellee, arguing that the court erred in awarding her child support in excess of her itemized expenses.

The master recognized that the actual expenses for the child did not correspond to what a child should expect to enjoy when the parents' combined monthly income exceeds $55,000. Further, the master examined the income of both parties, and recognized that the child's current expenses are minimal, because of the mother's economic circumstances. It is also noteworthy that appellant had voluntarily been paying $2,500 per month in support, despite the fact that he was only required to pay $1750 per month under the *pendente lite* order. Neither the master nor the court was required to ignore that, when appellee excepted from the master's recommendation of $2500 in monthly support after the first master's

hearing, it was appellant who urged the court to adopt that precise recommendation—the same sum he now challenges.

## II.

In fashioning the appropriate level of support in this case, appellant suggests that the child should not be treated in the same way as a child who actually enjoyed the experience of living in a family unit. Needless to say, if the family unit were intact, there would be no need to resort to the use of Guidelines, directly or as a reference point in an above guidelines case. The decision as to support does not turn on whether the parents were ever married to each other; a child's needs are not tied to the parents' prior marital status. Nor can we sanction a system of calculating support that varies with the parents' prior marital status; to do so would penalize children born out of wedlock.

As we noted, the Guidelines were formulated, in part, to achieve equity and consistency in child support awards. "The guidelines are premised on the concept that 'a child should receive the same proportion of parental income, and thereby enjoy the same standard of living, he or she would have experienced had the child's parents remained together.'" *Allred v. Allred,* 130 Md.App. 13, 17, 744 A.2d 70 (2000) (quoting *Voishan,* 327 Md. at 322, 609 A.2d 319). Under the income shares model, the child is entitled to a standard of living that corresponds to the economic position of the parents. The child of a millionaire ought to have a lifestyle of advantage, and should not be consigned to a meager existence, even if the parents were never married to each other.

We see no sound public policy in adopting a system of calculating child support in an above guidelines case that rewards a child whose parents were married, but denies equal advantages and economic opportunities to a child whose parents were not married. Accordingly, we reject appellant's contention that Taila, as a child born out of wedlock, is not entitled to the same level of support as would be afforded to a

child who is the product of a marriage. When it comes to the needs of children, there is no place for a court-approved two-class system that rewards the choices of the parents at the expense of the child. Regardless of whether Taila's parents were married, she is a child of a wealthy father and she is entitled to at least some of the privileges of wealth.

Cases from other jurisdictions support this rationale. *See Finley v. Scott*, 707 So.2d 1112, 1117 (Fla.1998) (upholding child support award of $5000 per month, where father was professional athlete with gross monthly income of approximately $266,926, and mother had much lower standard of living; court stated that "[t]he crux of the difficulty is settling on whose standard of living determines the 'needs' of this child.... Clearly the 'needs' of this child should not be solely based on what the mother can afford to spend on her, consistent with the mother's much lower standard of living. That ... would be inequitable."); *Hector v. Raymond*, 692 So.2d 1284, 1287–88 (La.App.), *cert. denied*, 695 So.2d 978 (La.1997) (upholding child support award of $6000 per month where father was a professional football player with income of about $100,000 per month, although child never enjoyed father's standard of living because parents never married and child never lived with father; mother had managed to meet child's needs with prior support of $1200 per month; although mother did not present evidence of needs of $6000 per month, court said that child should not be denied "the opportunity of a certain lifestyle that would be available to a minor child born to a legal union"; court recognized that mother's "support requirements were based on a situation which did not take into consideration the standard of living that [the child] would be entitled to were he to reside with his father").

 We are also unpersuaded by appellant's contention that the court should have capped the award of support at the amount consistent with the top of the Guidelines, as if the parents had a combined adjusted actual income of $10,000 per month. That argument was squarely rejected in *Voishan.* There, the Court was not persuaded by the father's position

that a " 'reasonable approach' would have been for the trial judge to assume that the maximum basic child support obligation listed in the schedule is not only applicable to combined monthly incomes of $10,000, but also applies to those in excess of $10,000 per month." *Id.* at 325, 609 A.2d 319. Further, the Court noted: "We are unpersuaded by [appellant's] argument that the legislature meant for all children whose parents earn more than $10,000 per month to have the same standard of living as those whose parents earn $10,000 per month." *Id.* at 326, 609 A.2d 319.

The *Voishan* Court recognized that, in an above guidelines case, "[e]xtrapolation from the schedule may act as a 'guide,' but the judge may also exercise his or her own discretion in balancing 'the best interests and needs of the child with the parents' financial ability to meet those needs.' " *Id.* at 329, 609 A.2d 319 (citation and footnote omitted). The Court added:

> While we believe that $1040 could provide the presumptive *minimum* basic award for those with combined monthly incomes above $10,000, we do not believe that the legislature intended to cap the basic child support obligation at the upper limit of the schedule. Had the legislature intended to make the highest award in the schedule the presumptive basic support obligation in all cases with combined monthly income over $10,000 it would have so stated and would not have granted the trial judge discretion in fixing those awards.

*Id.* at 325–26, 609 A.2d 319 (internal citations omitted).

## CONCLUSION

■■■■ Considering that appellant's income exceeded $500,000 a year, we are hard pressed to find either error or abuse of discretion by the court in setting appellant's monthly support obligation at $2500.[9] The award amounted to 5% of

---

9. As the master noted, in the event that appellant's career suffers a setback, the child support award could be modified, based on a materi-

appellant's gross monthly income, assuming an income of $500,000 a year, which is less than appellant's actual income during the relevant time. Such an award is hardly excessive. Nor does it constitute a back door means of enriching the mother. Rather, the master believed that $2500 per month "would allow the child to maintain a comfortable living, provide some cushion against unforeseen circumstances, [and] allow the plaintiff to do some investing for the child while allowing the defendant to do the same." The court agreed when it adopted the recommendation.

Understandably, a custodial parent of a child whose non-custodial parent is extremely wealthy will inevitably reap some benefits. But, this is not a case in which the mother was greedy, excessive, or unreasonable. Nice housing with quality furnishings, child care, private school tuition, tutoring, summer camp, lessons, recreational and cultural activities, toys, vacations, and other luxuries are among the privileges generally afforded to children in families with earnings comparable to the earnings in this case. Although these opportunities are often costly, children of middle class families sometimes enjoy many of these same luxuries. Such advantages for Taila are equally appropriate.

We are satisfied that the master and the court properly balanced the best interests and needs of the child with the parents' respective financial abilities to meet those needs. Therefore, the trial court did not err or abuse its discretion in awarding appellee $2500 in monthly child support.

**JUDGMENT AFFIRMED. COSTS TO BE PAID BY APPELLANT.**

al change in circumstances. *See Drummond v. State,* 350 Md. 502, 509, 714 A.2d 163 (1998); *Wills,* 340 Md. at 488, 667 A.2d 331; *Walsh,* 333 Md. at 497–98, 635 A.2d 1340; *Wagner v. Wagner,* 109 Md.App. 1, 43, 674 A.2d 1, *cert. denied,* 343 Md. 334, 681 A.2d 69 (1996).